**FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk, Esq. (SBN 109234)
*jrk@classactionlaw.com*
Trenton R. Kashima, Esq. (SBN 291405)
*trk@classactionlaw.com*
550 West C Street, Suite 1760
San Diego, California 92101
Tel: (619) 238-1333; Fax:  (619) 238-5425

**AHDOOT & WOLFSON, PC**
Tina Wolfson, Esq. (SBN 174806)
*twolfson@ahdootwolfson.com*
Robert Ahdoot, Esq. (SBN 172098)
*rahdoot@ahdootwolfson.com*
Ted Maya (SBN 223242)
*tmaya@ahdootwolf.com*
1016 Palm Avenue
West Hollywood, California 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

**BARBAT, MANSOUR & SUCIU PLLC**
Nick Suciu III, Esq. (*Pro Hac Vice* application forthcoming)
*nicksuciu@bmslawyers.com*
434 West Alexandrine Street, Suite 101
Detroit, Michigan 48201
Tel: (313) 303-3472

*Attorneys for Plaintiff and the Putative Classes*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA KASKORKIS and KIM CARTER, individually and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>GENERAL NUTRITION CENTERS, INC., a Delaware Corporation, GENERAL HOLDINGS, INC., a Delaware Corporation,<br><br>    Defendant. | Case No: 3:16-cv-00990-WQH-JLB<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Jenna Kaskorkis and Kim Carter ("Plaintiffs"), individually and on behalf of all others similarly situated, based on the investigation of counsel as to the actions and omissions of defendants herein, and by their own individual knowledge as to those averments pertaining to their own circumstances, hereby complain against defendants General Nutrition Centers, Inc. and General Holdings, Inc. (collectively, "GNC" or "Defendants") as follows:

## **INTRODUCTION**

1.     This is a civil class action seeking monetary damages, restitution, and injunctive and declaratory relief from GNC arising from its deceptive and misleading labeling and marketing of merchandise it sells on its Internet website: www.gnc.com.

2.     During the Class Period, GNC misrepresented the existence, nature, and amount of price discounts on products for sale on its website by purporting to offer steep discounts off of fabricated, arbitrary, and false former prices.

3.     Specifically, on its website GNC represented "Regular Price(s)" that were artificial, arbitrary, and did not represent a bona fide price at which GNC formerly (or ever) sold the given product.  Nor were the advertised "Regular Price(s)" prevailing market retail prices within three months immediately preceding the publication of the advertised former prices, as required by California law.

4.     Having touted a false "Regular Price," GNC then offered, on the same web page as the false "Regular Price" representation, to sell the given product at a price termed "Sales Price," which supposedly represented a discount off of the false "Regular Price."

5.     But GNC's "Regular Price" representation, which represented to consumers the purported market or former price of the given product, was a sham. The "Regular Price" advertised for a given product did not represent a market price at all — much less a former price in the preceding three months.  They are fictional creations designed to enable GNC's phantom markdowns.

6.     All products can be falsely advertised as "fifty-percent off" if an

CLASS ACTION COMPLAINT

unscrupulous retailer creates a fictional "Regular Price" that is twice the actual market price of the product.   Moreover, all goods can be advertised as on "sale" or "discounted" if the unscrupulous seller uses a fictitious market price as the source of comparison.   Dishonest retailers are able to use the above-described deceptive practices to successfully mislead consumers.   This is because representations regarding discounts are material; they are a fundamental representation of a good's value and, therefore, effectively motivate purchases.   GNC markets products in this manner, advertising false discounts to increase its sales and promote itself as a low cost retailer.

7.     The Federal Trade Commission ("FTC") describes the fictitious pricing scheme employed by GNC as deceptive:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. *If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising* of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. *If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a) (emphasis added).

8.     Similarly, California statutory and regulatory law expressly prohibits false pricing schemes.   *Business & Professions Code* § 17501, entitled "*Value determinations; Former price advertisements*," states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> *No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication*

*of the advertisement* or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

(emphasis added).

9.     When marketing products on its website, GNC displays a "sale" price along with a purported "regular" price to invite comparison.  The regular price is displayed either in struck-through typeface (*e.g.* "~~Price: $59.99~~") or grayed typeface (*e.g.* "Regular Price: $59.99") that is placed directly above the more prominently displayed "sale price" presented in red font (*e.g.* "Sales Price: $59.99").  Any reasonable consumer viewing GNC's website would believe that the "~~Price: $XX.XX~~" or "Regular Price: $XX.XX" is GNC's normal price for the product and/or the prevailing price of the market (*i.e.* the "regular" price).  The difference between this "Regular" price and GNC's "Sales Price" is viewed as a discount or purported savings.  GNC's advertised "discounts," however, are completely illusory or, at best, grossly overstated.

10.     GNC's "regular" price is not the prevailing market price for the subject product from either one of GNC's competitors or the price charged by GNC for the product in the regular course of its business.  Rather, the "regular" price is either (1) the highest price the product has ever been listed for, regardless of when the price was advertised, or (2) is simply a fiction.  Stated plainly, GNC cherry-picks the highest price it can find for an item and uses it as a benchmark to create the appearance of a significant price discrepancy and convey the impression of considerable savings.  Instead, it is GNC's "sale" prices that are the regular price for which its subject products are offered.

11.     GNC's "sale" prices, in reality, are often higher than the prices of its competitors and products marked as on "sale" are invariably sold without a true discount.  GNC's customers are not receiving the benefit of the savings advertised by purchasing "discounted" products from GNC.  In fact, even if GNC's prices were competitive with other retailers in the market (which they are not), a customer still

- 3 -

incurs higher costs by purchasing a product through GNC.com due to shipping and handling fees, expenses not incurred at traditional brick-and-mortar retailers.

12. Thousands of consumers, including the Plaintiffs, were victims of GNC's deceptive, misleading, and unlawful false pricing scheme and thousands more will be so victimized if the practices continue.

13. GNC fraudulently concealed from, and intentionally failed to disclose to, Plaintiffs and others similarly situated, the truth about what it called its "Regular Price(s)" and advertised price discounts from those supposedly former or "Regular" prices.

14. Plaintiffs relied upon such false representations of the "Regular Price" and so-called discounts when purchasing goods from the GNC website. Plaintiffs would not have made such purchase, or would not have paid the amount they did, but for GNC's false representations of the former price or "Regular Price" of the goods they purchased, as compared with the supposedly discounted "Sales Price" at which GNC offered the items for sale.

15. Plaintiffs, in short, believed the truth of the price representations attached to the products they purchased from GNC, which expressly told them that they were getting a bargain on their purchases. In fact, Plaintiffs were not receiving bargains at all.

16. Through its false and deceptive marketing, advertising, and pricing scheme, GNC violated (and continues to violate) California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, GNC violated (and continues to violate) California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17501, *et seq*., the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1770, *et seq*., the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17000, *et seq*., and the Federal Trade Commission Act ("FCTA"), which prohibits "unfair or deceptive

CLASS ACTION COMPLAINT

acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. § 52(a); 15 U.S.C. § 45(a)(1).

17.    Plaintiffs, individually and on behalf of all others similarly situated, seek restitution and other equitable remedies, including declaratory relief and and injunctive relief under the UCL, FAL, and CLRA.

## JURISDICTION AND VENUE

18.    This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b). Plaintiffs and Class members are citizens of different states as the Defendants, and more than two-thirds of the proposed plaintiff class, on the one hand, and Defendants, on the other, are citizens of different states. The aggregate amount in controversy for Plaintiffs and the Class members exceeds $5 million, exclusive of interest and costs.

19.    This Court has personal jurisdiction over Defendants because Defendants conduct business in California and otherwise intentionally avail themselves of the markets in California to render the exercise of jurisdiction by this Court proper. Defendant has marketed, promoted, distributed, and sold the products in California.

20.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the acts and transactions giving rise to the violations of law complained of herein occurred in this District, and because Defendants:

(a)    conduct business itself or through agent(s) in this District by advertising, marketing, distributing, and/or retailing its products in this District; and/or

(b)    are licensed or registered in this District; and/or

(c)    otherwise have sufficient contacts with this District to justify Defendants being fairly brought into court in this District.

## PARTIES

21.    Plaintiff Jenna Kaskorkis is a resident of San Diego, California.  Plaintiff Kim Carter is a resident of Oakland, California.   Both Plaintiffs purchased the products alleged herein from GNC.com, while residing in California.

CLASS ACTION COMPLAINT

22.     Defendants GNC Holdings, Inc. and General Nutrition Centers, Inc., are Delaware Corporations headquartered in Pittsburgh, Pennsylvania.  GNC is one of the largest online retailers of nutritional supplements, health and diet products, and beauty supplies in the United States.  GNC operates a retail store website: www.gnc.com.

## FACTUAL ALLEGATIONS

23.     Customers of the GNC retail website can navigate its contents by either using a key-word search to find a specific product or by browsing products grouped by category (*e.g.*, "Vitamins," "Sports Nutrition," *etc.*).  Regardless of the method, consumers are presented with webpages of "results" responsive to their request. These result webpages provide a title, price, and picture of multiple products fitting the description of the product of interest, so that a consumer can quickly find the item they wish to purchase:



GNC displays only a limited amount of information on its "results pages."  Among the information provided are the product's "Regular Price" and its "Sales Price."

CLASS ACTION COMPLAINT

Immediately below the regular price is GNC's "Sales Price," which is lower than the Regular Price and displayed in red, bold font.  Sale prices are found only on select products, thereby reinforcing the perception that these products are on sale.

24.     When a customer selects a product from the results webpage, they are directed to a webpage that contains detailed information about the selected product. GNC's discount pricing is prominently displayed on this webpage as well.  Using the protein powder purchased by Plaintiffs as an example, the following is an excerpt from GNC's webpage for the Optimum Nutrition 100% Whey protein powder:



Similar to the results webpage, GNC uniformly presents its "Regular Price" in stricken typeface and the "Sales Price" in red font.

25.     On or about March 10, 2016, Plaintiff Kaskorkis shopped on the GNC website.  She observed that merchandise was advertised with a "Regular Price" directly next to a significantly reduced "Sale Price."  Enticed by the idea of paying a price significantly less than the market price, Kaskorkis was induced to purchase two items (Order No. 4480155595): a 2lb container of Optimum Nutrition 100% Whey Gold Standard™ French Vanilla Creme protein powder, Item No. 3267258 and a 60-tablet bottle of Healthy Natural Systems' Garcinia Cambogia Extract, Item No. 19152796.  GNC represented the Optimum Nutrition Whey 100% Gold Standard™ protein powder as having a "Regular Price" of $49.99, with a "Sale Price" of $34.99. Similarly, GNC advertised the Healthy Natural Systems® Garcinia Cambogia Extract

CLASS ACTION COMPLAINT

with a "Regular Price" of $26.99 and a "Sale Price" of $17.99.  Kaskorkis purchased these items for the advertised "Sale Price."

26.   By purchasing the Optimum Nutrition Whey 100% Gold Standard™ protein powder and Healthy Natural Systems® Garcinia Cambogia Extract for the "Sale Price" of $34.99 and $17.99, respectively, instead of the "Regular Price" or market price, Kaskorkis was led to believe that she saved approximately 33% on her purchase.  In reality, GNC never intended, nor did it ever, sell these items at the represented market or "Regular Price."  Thus, Kaskorkis was deceived by the false price comparison into making a full retail purchase with no discount.

27.   Similarly, on February 13, 2016, Plaintiff Carter also purchased a number of products from GNC's website based on Defendants' false pricing representations. For example, Carter purchased 12 pack of Quest Protein Bars: Cookies and Crème flavor for the "Sale Price" of $25.99.  The same product also was advertised as having a "Regular Price" of $35.99.  Accordingly, Defendants represented that Carter was saving approximately 30% of the product's regular price.  Defendants, however, had been offering the 12 pack of Quest Protein Bars for $25.99 in the three months preceding her purchase.  Carter saved nothing when compared to Defendants' regular pricing.  But even worse, other retailers, including the manufacturer of the Quest Protein Bars, had been selling the same product for $24.99 (a dollar less than Defendants' price) at the same time and in the three months preceding Carter's purchase.  Accordingly, Carter actually paid more purchasing Defendants' "discount" products than she would have had she purchased them from GNC's competitors.

28.   Plaintiffs' and class members' reliance on GNC's false price comparison advertising was reasonable.  In fact, empirical market studies provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings…[A] comparative price advertisement can be construed as deceptive if it makes any

- 8 -

representation, … or involves any practice that may materially mislead a reasonable consumer.

Dhruv Grewal and Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, JOURNAL OF PUBLIC POLICY & MARKETING, Vol. 11, No. 1, at 52 (Spring 1992).  In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product…Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55-56.

29.    By using both a "Regular" and a "Sale" price, Defendant communicates that its products are discounted from their normal, everyday pricing, and are less expensive than the market price.  Plaintiffs and the putative class rely on these representations to make purchasing decisions.  Thus, GNC makes the "regular" price as large as possible to exaggerate the savings that are supposedly realized by either (1) using the highest "Regular" price at which a product has ever been listed on its website (regardless of when the price was established or if it represents the price at which the product would normally be sold by GNC), or (2) completely fabricating the baseline price.  Accordingly, GNC knows, or should have known, that it misinforms its consumers regarding the discount pricing of its products.

30.    GNC's illusory discounts are particularly misleading because consumers often decide to make purchases based on an internal reference price – *i.e.*, customers will often make a purchasing decision when they believe products to be less expensive than the perceived "normal" value of a given item.  By featuring "discounts" derived from improper price comparisons, GNC takes advantage of this well-documented behavior in order to influence its customers into purchasing an item.  GNC's practices also mollify consumers' concerns about missing a "better deal" and discourages comparison shopping by creating a false sense of urgency (an impression that the "sale" pricing is temporary and that a consumer should act quickly or lose significant

- 9 -

savings).

31.    GNC also inflates its "Regular" prices to maintain the illusion that GNC pricing is consistently lower than other retailers.  "Online retailers don't use blowout sales since it's so easy to shop there.  But to provide confidence to consumers that they are consistently getting good deals, it's even more important for them to provide price comparisons."[1]   If GNC actually advertised a valid "Regular" price that accurately reflected the current market price of a product, consumers would be aware that GNC does not provide the deals it purportedly offers and would not make purchases from its website.

32.    By way of example, at the time of Plaintiff Kaskorkis' purchase, and in the three months preceding, Bodybuilding.com offered the Optimum Nutrition 100% Whey Gold Standard Protein Powder, 2 lbs, for approximately $29.98 while Amazon.com offered the same product for approximately $29.99.  GNC's price, as paid by Plaintiff Kaskorkis, was significantly more expensive at $34.99.  Even the manufacturer, Optimum Nutrition, offers this product for the lessor price of $29.99 through its website.  Yet, GNC advertises that its Optimum Nutrition 100% Whey Gold Standard protein powder is substantially discounted from the "Regular Price" of $49.99, even though this was not the actual, *bona fide* price at which the product was offered on either GNC.com or at any of its major competitors for the past three months.

33.    Furthermore, the "Regular Price" for the Healthy Natural Systems Garcinia Cambogia Extract was not actually $26.99 and this product was not on "sale."   Neither GNC nor its major competitors had sold this Garcinia Cambogia Extract for $26.99 – which is two dollars more than the Manufacturer's Suggested

---

[1]   *See* David Streitfeld, *It's Discounted, but Is It a Deal? How List Prices Lost Their Meaning*, NEW YORK TIMES (March 6, 2016), available at <http://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html>.

CLASS ACTION COMPLAINT

Retail Price – in the three months preceding Plaintiff's purchase.  GNC had instead sold the Healthy Natural Systems Garcinia Cambogia Extract for as little as $13.99 in September of last year.  Thus, Plaintiff did not receive the benefit of GNC's advertised bargain.

34.   These false discounts are not limited to the products that Plaintiff purchased.  Instead, these false and misleading discounts appear on a large percentage of GNC's products.

35.   Despite the "Regular Price"/"Sale Price" scheme used by GNC, Plaintiffs would purchase GNC products in the future from the GNC website and/or other retail establishments, if discount representations accurately reflect former prices and discounts.  Currently, however, Plaintiff and California consumers have no realistic way to know which — if any — of GNC's price comparisons are truthful.  If the Court were to issue an injunction ordering GNC to comply with California's comparative price advertising laws, and prohibiting GNC's use of the deceptive practices discussed herein, Plaintiffs would likely shop for GNC products again in the near future on the GNC website.

36.   By marketing products' "Regular" prices at artificially high levels – levels that would not be competitive in the current prevailing market – GNC concocts discounts that do not exist.

37.   Such practice is not novel or unique; unscrupulous retailers have historically used the same misleading tactic.  Both California lawmakers and federal regulators prohibited such injurious conduct.  As stated above, California Business & Professions Code, section 17501, specifically states that:

> No price shall be advertised as a former price of any advertised thing, unless the *alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement* or *unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement*.

(Emphasis added).

CLASS ACTION COMPLAINT

38.     The provision of section 17501 differentiates subjective uncertainty from clear illegality.  The market price at the time of publication of such an advertisement is the average price charged in the locality where the advertisement is published. Accordingly, GNC can only include a "Regular" price in its advertisements, for comparative purposes, if (1) the prevailing market price has been researched (in each relevant market) and the "Regular" price is the average retail market price within the past three months, or (2) it advertises the date on which the published "Regular" price was last in effect.  GNC does neither.

39.     Also, as stated above, GNC's practices are cited with disapproval by federal regulations intended to protect consumers:

> . . . a reduction from the advertiser's own former price for an article. If the *former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time*, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. *In such a case, the "reduced" price is, in reality, probably just the seller's regular price.*

16 C.F.R. § 233.1(a) (emphasis added).

40.     The law thus confirms what is inherently apparent: a business acts improperly when it manufactures or exaggerates a discount intended to make products appear more attractive.

## CLASS ALLEGATIONS

41.     Plaintiffs brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Class of persons:

> All persons in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased a product from the GNC website at www.gnc.com.

- 12 -

42.     Excluded from the Class are GNC, its parents, subsidiaries, affiliates, officers and directors, any entity in which GNC has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

43.     Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

44.     <u>Numerosity</u>. While the exact number of Class members is unknown to Plaintiffs at this time, and will be ascertained through appropriate discovery, Plaintiffs are informed and believes that the Class consists of thousands of members.   The number of individuals who comprise the Class is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

45.     <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by GNC's wrongful conduct as complained of herein, in violation of federal and state law.  Plaintiffs are unaware of any interests that conflict with or are antagonistic to the interests of the Class.

46.     <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in consumer class action lawsuits and complex litigation.  Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs are aware of their duties and responsibilities to the Class.

47.     <u>Commonality</u>. GNC has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-defined community of interest in the

CLASS ACTION COMPLAINT

questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are, *inter alia*:

    a.    Whether, during the Class Period, GNC used false representations and falsely advertised price discounts on its products sold on the GNC website;

    b.    Whether, during the Class Period, GNC advertised its "discounted" products in a deceptive, false, or misleading manner;

    c.    Whether, during the Class Period, the market prices advertised by GNC were the prevailing market prices for the respective products sold at the GNC website during the three month periods preceding the dissemination and/or publication of the advertised former prices;

    d.    Whether, during the Class Period, GNC's advertised "Regular" prices for its products are determined by averaging the price of the given product in the prevailing market over the previous three months;

    e.    Whether GNC engaged in unfair, unlawful, and/or fraudulent business practices under California Law;

    f.    Whether GNC misrepresented and/or failed to disclose material facts about its product pricing and discounts;

    g.    Whether GNC has made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

    h.    Whether GNC advertised the date on which the "Regular" price of a product was determined;

    i.    Whether GNC's alleged business practices constitute unfair methods of competition and unfair or deceptive acts or practices in violation of, *inter alia*, CAL. BUS. & PROF. CODE §§ 1770, *et seq.*, by making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;

    j.    Whether GNC's business practices, alleged herein, constitute misleading and deceptive advertising under, *inter alia*, CAL. BUS. & PROF. CODE §§ 17500-01;

CLASS ACTION COMPLAINT

k. Whether GNC's business practices, alleged herein, constitute "unlawful," "unfair," or "fraudulent" business acts or practices under, *inter alia*, CAL. BUS. & PROF. CODE §§ 17200, including: whether GNC's advertisement of illusory discounts constitutes "unlawful" or "unfair" business practices by violating the public policies set out in CAL. CIV. CODE §§ 1770(a)(13), CAL. BUS. & PROF. CODE §§ 17500-01, 16 C.F.R. § 233.1, and other California and federal statutes and regulations;

l. Whether GNC's conduct, as alleged herein, was intentional and knowing;

m. Whether Class members are entitled to damages and/or restitution, and in what amount;

n. The nature and extent of equitable remedies, including restitution of shipping costs; and declaratory and injunctive relief to which Plaintiffs and the Class are entitled

o. Whether GNC is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

p. Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, and costs of suit.

48. <u>Superiority of Class Action</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in managing this action as a class action.

# **FIRST CAUSE OF ACTION**

### **Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* - Untrue, Misleading and Deceptive Advertising**

49. Plaintiffs hereby incorporate by reference each of the allegations

- 15 -

CLASS ACTION COMPLAINT

contained in the preceding paragraphs of this Complaint.

50. California Business and Professional Code, section 17501, states that:

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

For the purpose of section 17501, the retail market price at the time of publication of such advertisement is the retail price in locality wherein the advertisement is published.

51. At all material times, GNC engaged in a scheme of advertising that its products were subject to a discount when such discounts were illusory and did not reflect the "prevailing marketing price" of the item for a particular time period in a particular location, or even the price at which the product was recently sold on GNC's website.

52. At all material times, GNC did not include the date on which its "Regular" price was established.

53. GNC's advertisement of an inflated "Regular Price" misrepresented and/or omitted the true nature of GNC's pricing. Said advertisements were made to consumers located within the State of California and come within the definition of advertising as contained in CAL. BUS. & PROF. CODE §§ 17500, *et seq*., in that such promotional materials were intended as inducements to purchase products on GNC's website and are statements disseminated by GNC to Plaintiffs and other members of the Class. GNC knew, or in the exercise of reasonable care should have known, that the statements regarding its pricing were false, misleading, deceptive and violated California law.

54. GNC has prepared and distributed within the United States, *via* its retail website, www.GNC.com, advertising that its products were subject to substantial discounts. Plaintiffs necessarily and reasonably relied on GNC's statements regarding

CLASS ACTION COMPLAINT

the pricing of its products, and all members of the Class were exposed to such statements.  Consumers, including Plaintiffs and members of the Class, were among the intended targets of such representations.

55.   The above acts of GNC, in disseminating said misleading and deceptive statements throughout the United States, including to Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature of GNC's discounts.  Thus, the above acts constitute violations of CAL. BUS. & PROF. CODE §§ 17500, *et seq*.

56.   Plaintiffs and other members of the Class who purchased products from GNC's website suffered a substantial injury.  Had Plaintiffs and members of the Class known that GNC's materials, advertisements, and other inducements misrepresented and/or omitted the true nature of GNC's discounts, they would not have purchased products from GNC.com, or would have paid less for them.

57.   Plaintiffs, on behalf of themselves and all other similarly situated consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (2) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or, alternatively, requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any products purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

## SECOND CAUSE OF ACTION

### Violation of CAL. CIV. CODE §§ 1750, *et seq.*- Misrepresentation of the Existence of a Discount

58.   Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

- 17 -

CLASS ACTION COMPLAINT

59.   GNC sells "goods" and "services" as defined by California Civil Code § 1761.

60.   Each of the Defendants is a "person" as defined by California Civil Code § 1761(c).

61.   Plaintiffs and Class members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased the products from GNC.com for personal, family or household use.

62.   The sale of the products to Plaintiffs and Class members *via* GNC's website is a "transaction" as defined by California Civil Code § 1761(e).

63.   As described herein, GNC violated the Consumers Legal Remedies Act ("CLRA") by falsely representing the nature, existence, and amount of price discounts by fabricating inflated market or "Regular" prices.  Such a pricing scheme violates California Civil Code:  (i)  Section 1770(a)(5) because GNC represented that its products have characteristics and benefits (discounts) that they do not have (because the items were not actually sold at the advertised "Regular" price for a reasonable period of time, and thus no true discount is being offered);  (ii)  Section 1770(a)(7) because GNC represented that its products were of a particular standard, quality, or grade (that the subject products were worth a higher "Regular" price and thus were more valuable) when they are of another (the products are not worth the stated "Regular" price and thus are not as valuable as advertised);  (iii)  Section 1770(a)(9) because GNC advertised goods with the intent not to sell them as advertised (because Defendant knew the goods were not valued at the advertised "Regular" prices);  (iv) Section 1770(a)(13) because GNC made false or misleading statements of fact concerning the amount of a price reduction (because the advertised "Regular" prices were false and inflated, and thus the consumers did not receive the discounts they thought they were receiving);  and (v)  Section 1770(a)(14) because GNC represented that the transaction confers or involves rights (the right to receive the offered discount amount) which it does not have or involve (the stated discounts are false or inflated, so

- 18 -

1    that the consumer is not receiving the discount that was offered or advertised).

2         64.   Plaintiffs relied on GNC's false representations in deciding to purchase

3    goods on the GNC website.  Plaintiffs would not have purchased such items absent

4    GNC's unlawful conduct.

5         65.   Plaintiffs and Class members were harmed as a result of GNC's unfair

6    competition and deceptive acts and practices. Had GNC disclosed the true nature of its

7    discounts, Plaintiffs and the Class would not have been misled into purchasing

8    products from GNC's website, or, alternatively, would have paid less for them.

9         66.   Plaintiffs, on behalf of themselves and all other similarly situated

10   California consumers, and as appropriate, on behalf of the general public of the state

11   of California, seek injunctive relief: (1) prohibiting GNC from continuing the

12   unlawful practices alleged herein, (2) directing GNC to make corrective notices both

13   on its website and in other appropriate media, (3) allowing Class members to return

14   any products purchased on GNC's website, at GNC's expense, which were subject to

15   GNC's unlawful pricing policy, or alternatively requiring GNC to price match any

16   competitor's advertised price for the same product, and refund any shipping and

17   handling fees for any products purchased on GNC's website subject to GNC's

18   unlawful pricing policy, and (4) any other relief deemed proper by the Court.

19        67.   Plaintiffs provided each of the Defendants with notice of its alleged

20   violations of the CLRA pursuant to California Civil Code § 1782(a) *via* certified mail,

21   demanding that GNC correct such violations.

22        68.   GNC failed to respond to Plaintiffs' CLRA notice within 30 days of its

23   receipt.  Thus, Plaintiffs seek all available damages under the CLRA for all violations

24   complained of herein, including but not limited to statutory damages, punitive

25   damages, attorney's fees and cost, and any other relief that the Court deems proper.

26        / / /

27        / / /

28        / / /

CLASS ACTION COMPLAINT

## **THIRD CAUSE OF ACTION**

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* - Unlawful Business Acts and Practices

69.    Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

70.    California Business and Professional Code, section 17501, states:

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

71.    Federal regulations also prohibit the use of deceptive and illusory discounts:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a).

72.    California Civil Code § 1770(a)(5) prohibits representing goods or services as having characteristics and benefits that they do not have.

73.    California Civil Code § 1770(a)(7) prohibits representing goods or services as having a particular standard, quality, or grade when they are of another.

74.    California Civil Code § 1770(a)(9) prohibits advertising goods or

- 20 -

services with intent not to sell them as advertised.

75. California Civil Code § 1770(a)(13) prohibits making false or misleading statements of fact concerning reasons for or the existence or amounts of price reductions.

76. California Civil Code § 1770(a)(14) prohibits representing that a transaction confers or involves rights which it does not have or involve.

77. The business practices alleged above are unlawful under California Business & Professional Code §§ 17500, *et seq*., California Civil Code §§ 1770(a)(9) & (13) and federal regulations, each of which forbids GNC's untrue, fraudulent, deceptive, and/or misleading marketing and advertisements.

78. Plaintiffs and Class members were harmed as a result of GNC's unfair competition and deceptive acts and practices. Had GNC disclosed the true nature of its "discounts," Plaintiffs and the Class would not have been misled into purchasing products from GNC's website, or, alternatively, would have paid less for them.

79. Plaintiffs, on behalf of themselves and all other similarly situated consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or, alternatively, requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any product purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## **FOURTH CAUSE OF ACTION**

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* - Unfair Business Acts and Practices

80.     Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

81.     Plaintiffs and other members of the Class suffered a substantial injury by virtue of GNC's unlawful scheme of advertising that its products were subject to a discount when such discounts were illusory and did not reflect the "prevailing market price" of the item during any particular time period at a particular location or even the price at which the product was previously sold on GNC's website.

82.     GNC's actions alleged herein violate the laws and public policies of California and the federal government as set out in preceding paragraphs of this Complaint.

83.     There is no benefit to consumers or competition by allowing GNC to deceptively market and advertise nonexistent discounts in violation of California Law.

84.     The gravity of the harm visited upon Plaintiffs and Class members outweighs any legitimate justification, motive, or reason for marketing and advertising discounted products in a deceptive and misleading manner which violates California law. Accordingly, GNC's actions are immoral, unethical, and unscrupulous, offend the established California public policies, and cause substantial injury to Plaintiffs and members of the Class.

85.     The above acts of GNC, in disseminating said misleading and deceptive statements throughout California to consumers, including Plaintiffs and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the "discount" and the existence of the "discounted" product in violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.*, and California Civil Code §§ 1770(a)(9) & (13).

86.     Plaintiffs and Class members were harmed and suffered actual damages

- 22 -

CLASS ACTION COMPLAINT

as a result of GNC's unfair competition and deceptive acts and practices.  Had GNC disclosed the true nature of the discounts, Plaintiffs and the Class would not have purchased products from GNC's website or, alternatively, would have paid significantly less for them.

87.   Plaintiffs, on behalf of themselves and all other similarly situated consumers, and as appropriate, on behalf of the general public, seek restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy or alternatively requiring GNC to price match any competitor's advertised price for the same product, and refund any shipping and handling fees for any product purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

## FIFTH CAUSE OF ACTION

### Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* - Fraudulent Business Acts and Practices

88.   Plaintiffs hereby incorporate by reference each of the allegations contained in the preceding paragraphs of this Complaint.

89.   Such acts of GNC as described above constitute a fraudulent business practice under CAL. BUS. & PROF. CODE §§ 17200, *et seq*.

90.   As more fully described above, GNC misleadingly markets and advertises its products as discounted from a "Regular Price," when such discounts are illusory and/or overstated.  GNC's misleading marketing and advertisements are likely to, and do, deceive reasonable consumers.  Indeed, Plaintiffs and other members of the Class were unquestionably deceived about the nature of GNC's pricing, as GNC prominently displayed its products as discounted on its website, which consumers must use to purchase GNC's offerings.

CLASS ACTION COMPLAINT

91.    GNC's misleading and deceptive practices caused Plaintiffs and other members of the Class to purchase the products and/or pay more than they would have otherwise had they known the true nature of GNC's advertisements.

92.    Plaintiffs and Class members were harmed as a result of GNC's unfair competition and deceptive acts and practices.

93.    Plaintiffs, on behalf of themselves and all other similarly situated consumers, and as appropriate, on behalf of the general public, seeks restitution and injunctive relief: (1) prohibiting GNC from continuing the unlawful practices alleged herein, (2) directing GNC to make corrective notices both on its website and in other appropriate media, (3) allowing Class members to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy, or alternatively requiring GNC to price match any competitor's advertised price for the same product, refund any shipping and handling fees for any products purchased on GNC's website subject to GNC's unlawful pricing policy, and (4) any other relief deemed proper by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the proposed Class pray for relief and judgment as follows:

A.    For an order declaring that this action is properly maintained as a class action, appointing Plaintiffs as representatives for the Class, and appointing Plaintiffs' counsel as Class counsel;

B.    For an order awarding Plaintiffs and the members of the Class actual damages, restitution and/or disgorgement and/or for an order directing each of the Defendants to allow its customers to return any products purchased on GNC's website, at GNC's expense, that were subject to GNC's unlawful pricing policy, or price match any competitor's advertised price for the same product purchased from GNC.com that were subject GNC's unlawful pricing policy;

E.    For an order enjoining each of the Defendants from continuing to engage

CLASS ACTION COMPLAINT

in the unlawful and unfair business acts and practices as alleged herein;

      F.    For an order directing each of the Defendants to make corrective notices on its website and in other appropriate publications.

      G.    For restitution of all shipping and handling fees charged for products purchased from GNC.com subject to GNC's unlawful advertising;

      H.    For an order awarding Plaintiffs' attorneys' fees and costs of suit, including expert witness fees, as permitted by law; and

      I.    Such other and further relief as this Court may deem just and proper.

## JURY TRIAL

Plaintiffs demand a trial by jury for all of the claims asserted in this Complaint so triable.

Respectfully submitted,

**FINKELSTEIN & KRINSK LLP**

Dated: August 1, 2016      By: _/s/ Trenton R. Kashima_____
              Jeffrey R. Krinsk, Esq.
              _jrk@classactionlaw.com_
              Trenton R. Kashima, Esq.
              _trk@classactionlaw.com_
              550 West C Street, Suite 1760
              San Diego, California 92101-3579
              Tel: (619) 238-1333; Fax: (619) 238-5425

**AHDOOT & WOLFSON, PC**

Dated: August 1, 2016      By: _/s/ Tina Wolfson_____
              Robert Ahdoot
              _rahdoot@ahdootwolfson.com_
              Tina Wolfson
              _twolfson@ahdootwlfson.com_
              Ted Maya
              _tmaya@ahdootwolfson.com_

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1016 Palm Avenue
West Hollywood, CA 90069
Tel: (310) 474-9111; Fax: (310) 474-8585

Nick Suciu III (*Pro Hac Vice*
Application Forthcoming)
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine #101
Detroit, MI 48201
Tel: (313) 303-3472

*Attorneys for Plaintiffs
and the Putative Classes*

- 26 -

CLASS ACTION COMPLAINT