JAMES D. NGUYEN (State Bar No. 179370)
    jimmynguen@dwt.com
SEAN M. SULLIVAN (State Bar No. 229104)
    seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

ZANA BUGAIGHIS (State Bar. No. 257926)
    zanabugaighis@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone:  (206) 622-3150
Fax:  (206) 757-7700

Attorneys for Defendants
GENERAL NUTRITION CENTERS, INC. and
GNC HOLDINGS, INC. (erroneously named as
GENERAL HOLDINGS, INC.)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA KASKORKIS and KIM CARTER, individually and on behalf of all others similarly situated,<br><br>                 Plaintiffs,<br><br>   vs.<br><br>GENERAL NUTRITION CENTERS, INC., a Delaware Corporation, GENERAL HOLDINGS, INC., a Delaware Corporation, and DOES 1-10,<br><br>                Defendants. | Case No. 3:16-cv-00990-WQH-JLB<br><br>JUDGE: HON. WILLIAM Q. HAYES<br>CASE FILED: APRIL 22, 2016<br><br>DEFENDANT GENERAL NUTRITION CENTERS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.................................1

II.   FACTUAL BACKGROUND ...........................................................................4

    A.  GNC's Pricing Activity Is Not Uniform. ................................................4

    B.  Plaintiffs' Counsel Failed to Adequately Confer Regarding
        Discovery..................................................................................................5

III.  ARGUMENT AND AUTHORITY ..................................................................10

    A.  Plaintiffs' Complaint Fails to Plead a Factual Basis Supporting
        Broad Class Discovery.............................................................................10

    B.  Even If Plaintiffs Plead Claims Related to "Other" Products,
        Plaintiffs' Discovery Requests Are Unfairly Broad and
        Burdensome..............................................................................................14

    C.  GNC's Responses and Production Are Reasonable.............................19

    D.  Sampling Is Appropriate if Discovery Is Ordered. ...............................21

IV.  THE COURT SHOULD STRIKE THE FORREST
    DECLARATION AS IMPROPER HEARSAY.............................................22

V.    CONCLUSION ..............................................................................................23

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Barnhart v. Safeway Stores, Inc.*,
    1992 WL 443561 (E.D. Cal. Dec. 14, 1992)............................................14, 21

*Block v. City of L.A.*,
    253 F.3d 410 (9th Cir. 2001) ...........................................................22

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*,
    408 F.3d 1142 (9th Cir. 2005) .................................................20, 21

*Buycks-Roberson v. Citibank Fed. Sav. Bank*,
    162 F.R.D. 338 (N.D. Ill. 1995) .......................................................17

*Crabtree v. Hayden, Stone Inc.*,
    43 F.R.D. 281 (S.D.N.Y. 1967)........................................................17

*Cranney v. Carriage Servs., Inc.*,
    2008 WL 2457912 (D. Nev. June 16, 2008) ....................................21

*Crawford-El v. Britton*,
    523 U.S. 574 (1998) .......................................................................10

*Dziennik v. Sealift, Inc.*,
    2006 WL 1455464 (E.D.N.Y. May 23, 2006)..................................17

*Evans v. Calise*,
    1994 WL 185696 (S.D.N.Y. May 12, 1994) ...................................11

*Feske v. MHC Thousand Trails Ltd. P'ship*,
    2012 WL 1123587 (N.D. Cal. Apr. 3, 2012)....................................21

*Flanigan v. Am. Fin. Sys. of Ga.*,
    72 F.R.D. 563 (M.D. Ga. 1976)........................................................17

*Harding v. Time Warner, Inc.*,
    2010 WL 457690 (S.D. Cal. Jan. 26, 2010) ....................................10

*Hatch v. Reliance Ins. Co.*,
    758 F.2d 409 (9th Cir. 1985) ............................................................17

*Micro Mot., Inc. v. Kane Steel Co.*,
    894 F.2d 1318 (Fed. Cir. 1990) .........................................................11

*In re Mortgagors of Temple-Inland Mortg. Corp.*,
    2001 WL 177181 (E.D. Pa. Jan. 24, 2001) ......................................17

*Nicholas v. CMRE Fin. Servs., Inc.*,
    2009 WL 1652275 (D.N.J. June 11, 2009) .......................................10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ..........................................................................11

*Samsung SDI Co. v. Matsushita Electric Industrial Co.*,
    2007 WL 4328482 (C.D. Cal. May 17, 2007)............................11, 12

*Skillsky v. Lucky Stores, Inc.*,
    893 F.2d 1088 (9th Cir. 1990) ..........................................................22

*Smith v. Lowe's Home Ctrs., Inc.*,
    236 F.R.D. 354 (S.D. Oh. 2006).......................................................21

*Smith v. T-Mobile USA, Inc.*,
    2007 WL 2385131 (C.D. Cal. Aug. 15, 2007) .................................21

*Soto v. Castlerock Farming & Transp., Inc.*,
    282 F.R.D. 492 (E.D. Cal. 2012).....................................................21

*Spieker v. Quest Cherokee, LLC*,
    2008 WL 4758604 (D. Kan. Oct. 30, 2008)....................................14

*Villegas v. J.P. Morgan Chase & Co.*,
    2009 WL 605833 (N.D. Cal. Mar. 9, 2009) .....................................10

*Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*,
    103 F.3d 294 (3d Cir. 1996) .............................................................11

**Statutes**

Cal. Bus. & Prof. Code § 17500..............................................................22

iii

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................. 11

Fed. R. Civ. P. 26(b)(1) ........................................................................... 11

Fed. R. Civ. P. 26(b)(3)(C)(iii) ................................................................ 21

iv

# I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion to compel seeks to obtain discovery that is wholly unsupported by Plaintiffs' own allegations and that is unfairly broad and burdensome in light of Plaintiffs' claims here.  It also ignores the discovery and responses GNC already provided and compromises proposed by GNC, which were imminently reasonable under the circumstances.  Plaintiffs' motion must therefore be denied.

Based on the two named plaintiffs' alleged purchase of three third-party branded products on sale from General Nutrition Centers, Inc.'s online website, GNC.com, Plaintiffs brought this putative class action seeking to represent a class of anyone in California who purchased ***any of the thousands*** of products from GNC.com in the last four years (without regard to how any of the products were priced or customers' reliance on that pricing).  Yet Plaintiffs allege no ***facts*** in support of their broad class allegations.  Instead, Plaintiffs impermissibly seek to bolster their unsupported class allegations through overbroad discovery requests aimed not at discovery of information related to their actual allegations, but to discovery of a viable claim (and class).

Notably, Plaintiffs demand ***every*** document regarding GNC's establishment of product pricing, both online and in-store, including for GNC-branded products (despite the fact that the named plaintiffs didn't purchase such products) and for GNC's membership pricing (despite the fact that the named plaintiffs are not members).  Contrary to what Plaintiffs would have this Court order, however, class discovery is limited in time and scope.  Plaintiffs fail to provide any cogent reason for the overbroad class discovery demanded that will impose considerable burden on GNC, especially given Plaintiffs' broad-based claim that GNC follows an unlawful general pricing ***policy*** that governs ***all*** GNC products.  Further, indicative of their true motive, Plaintiffs brought this motion after rejecting reasonable compromises

1

proposed by GNC, including a sampling procedure whereby GNC could demonstrate that the pricing of other GNC products is not similarly situated to that of the products Plaintiffs purchased and GNC's agreement to provide documents and/or testimony relating to its policies for setting prices.

As detailed further below, GNC opposes Plaintiffs' motion for the following reasons:

***First***, Plaintiffs may not use broad-based discovery as a proxy for alleging specific facts sufficient to support their broad class allegations.  On the basis of two named plaintiffs' purchase of three products from GNC's website, Plaintiffs seek to obtain discovery of every single product sold on GNC's website over the past four years, without limitation.  Plaintiffs' broad discovery amounts to nothing more than an unsupported fishing expedition, aimed not at supporting Plaintiffs' allegations, but at finding a viable claim (or class).  Plaintiffs' refusal to discuss compromise solutions proposed by GNC bolsters this conclusion.  Faced with Plaintiffs' overbroad discovery requests, GNC responded by limiting its responses and production initially to those products specifically purchased by Plaintiffs, as no specific facts were alleged in Plaintiffs' First Amended Complaint ("FAC") regarding GNC's other products.  GNC also agreed to provide discovery regarding its policies and procedures for setting prices.  Further, as a compromise on its initial position, GNC then offered to agree on a sampling procedure in order to demonstrate to Plaintiffs why discovery into products beyond the three specifically alleged is improper.  After initially engaging in discussions with GNC, Plaintiffs abruptly ceased all further meet and confer efforts on this issue, deciding instead to bring this issue before the Court.  Plaintiffs' request to compel broad discovery seeking information about products for which they include nothing but conclusory allegations in their complaint must be denied.

***Second***, even if Plaintiffs had sufficiently alleged facts regarding other products, the discovery Plaintiffs insist upon is impermissibly broad.  Plaintiffs

2

literally request every document regarding the establishment of pricing for every single product GNC sells both online and in-store, whether or not relied upon to actually set prices.  Illustrative of the overbreadth of their requests, Plaintiffs seek information about the establishment of member pricing though the named plaintiffs are not members, and GNC branded products though the named plaintiffs purchased third-party branded products only.  Further, the evidence sought by Plaintiffs about every product GNC sells is wholly unnecessary to support Plaintiffs' alleged theory that GNC follows a common unlawful pricing policy for all of its products.  Plaintiffs' motion to compel such broad and burdensome discovery must be denied, especially where, as here, GNC has proposed reasonable compromises that would provide Plaintiffs with the discovery necessary to test their class claims and GNC's defenses to those claims.

*Third*, Plaintiffs fail to acknowledge discovery they have ***already*** obtained. GNC already produced ample class-related discovery, including (i) ***four years*** of sales records for the three products at issue, including in-store and online sales; (ii) ***four years*** of pricing calendars for these products (showing when these products were offered for sale and for how long); and (iii) internal screenshots of its pricing system.  GNC has also agreed to produce discovery, through documents or testimony, about its policies and procedures for its pricing practices.  Plaintiffs assert the documents already produced are of "unknown significance," which ignores that they specifically requested these documents and are asking for the same documents for all GNC products.  Also, contrary to Plaintiffs' claims (and Mr. Kashima's declaration), GNC has produced lists of its entire online product offerings to assist Plaintiffs in choosing products for a sample set.  Plaintiffs have also served GNC with an eleven-page 30(b)(6) Notice of Deposition, which GNC intends to respond to and designate witnesses to testify, and served a third party subpoena on Radial, the company hosting GNC's website.

Accordingly, as more fully detailed below, Plaintiffs' Motion must be denied. At most, if the Court believes discovery beyond the three products alleged in the FAC is appropriate, a sampling procedure is warranted to allow GNC to demonstrate pricing for GNC products is not uniform and to reduce the burden to GNC. Finally, GNC moves to strike the Declaration of Douglas E. Forrest as lacking personal knowledge and relying on inadmissible hearsay.

## II.    FACTUAL BACKGROUND

### A.    GNC's Pricing Activity Is Not Uniform.

GNC is a premier seller of third-party branded and proprietary supplements through GNC.com.[1]  Declaration of Kevin Maloberti ("Maloberti Decl.") ¶ 2. Currently, GNC sells over *six thousand* different products online and more in-store. *Id.*  GNC's business is divided into nine distinct product categories, each separately and independently responsible for the pricing of the products contained therein.  *Id.* ¶ 3.  In addition, at material times the GNC e-commerce team had authority to adjust prices.  *Id.*  Depending on the category and the product, GNC analyzes multiple factors to determine its pricing, including but not limited to competitor pricing, pricing history, cost, GNC revenue goals, and product performance.  *Id.* ¶ 4. Throughout the class period, GNC offered products for sale online at regular, sale, best price, member, and member sale prices.  *Id.* ¶ 5.  In addition, GNC periodically offers various promotions—such as buy-one-get-one-free or buy-one-get-one-half-off, and offers coupons for select purchases.  *Id.*  Prices are re-evaluated frequently and are set for two-month merchandising periods, but subject to adjustment at any time depending on a product's sales performance and availability.  *Id.*

Products vary considerably and include popular whey supplements (such as the one purchased by Kaskorkis), flax seed oil, toothpaste, vitamins, salt scrubs,

---

[1] GNC also sells supplements through nationwide brick-and-mortar corporate and franchise stores.  These stores are not included in the class definition.

4

books, fitness monitors, tea, shampoo, meal replacements, and diet products. *Id.* ¶ 6. Accordingly, prices—let alone sale prices and promotions—are not uniform across GNC products (or even with respect to the same product) throughout the year(s) and establishing those prices depends on disparate considerations. *Id.* This variation also means that GNC prices are sometimes, but not always, the best available price for the product in a particular market. *Id.*

GNC's product pricing is set apart from its competitors due to its extensive, exclusive membership program, which from at least 2012 to December 2016, customers could join by purchasing a "Goldcard" annual membership, and its proprietary GNC branded products. *Id.* ¶ 7. As a key benefit of GNC's membership program, members receive separate member pricing (regular and sale prices) for all GNC products. *Id.* Paying the annual fee for this membership program benefits customers only if they receive product prices that are ***better*** than GNC's regular prices. *Id.* In other words, GNC must—and in fact regularly does—offer its products at regular prices in order to incentivize customers to pay for its membership program and therefore member pricing. *Id.*; *see* FAC (Dkt. 10) ¶ 23 ("Sale prices are found only on select products, thereby reinforcing the perception that these products are on sale."). Indeed, at any given time, the majority of the thousands of products on GNC's website are offered at regular price. Maloberti Decl. ¶ 7. GNC also offers proprietary GNC-branded products that are priced separately from third-party branded products due to factors including manufacturing costs, among others, not present in the sale of third-party branded products. *Id.* ¶ 8.

### B. Plaintiffs' Counsel Failed to Adequately Confer Regarding Discovery.

Plaintiffs claim time is "too short," they have had to hold Defendants "accountable," and they have been "diligent." Mem. (Dkt. 33-1) at 4. Yet Plaintiffs failed time and again to confer with GNC and instead insisted on vastly overbroad discovery on a non-viable class, repeatedly chose to involve the Court, and added

further delay by taking three weeks to file this Motion.  Because Plaintiffs have not adequately engaged in the meet and confer process and have not proposed an alternative for a sampling procedure, Plaintiffs' Motion is premature.

On August 26, 2016, Plaintiffs served their First Set of Requests for Production of Documents and First Set of Special Interrogatories to GNC. Declaration of Zana Bugaighis ("Bugaighis Decl.") ¶ 2.  On September 26, 2016, GNC served Objections and Responses.  *Id.* ¶ 3; Dkts. 33-5 & 33-6.  GNC objected to Plaintiffs' broad discovery requests into all GNC products because discovery beyond the three products purchased by Plaintiffs was not reasonably calculated to lead to the discovery of admissible evidence.  Bugaighis Decl. ¶ 3; Dkts. 33-5 & 33-6.

Counsel for both parties subsequently met and conferred telephonically and exchanged letters regarding the scope of discovery.  Bugaighis Decl. ¶ 4.  In response to Plaintiffs' concerns, GNC memorialized the understandings between the parties, agreed to produce additional information, and informed Plaintiffs that GNC was "considering possible compromise approaches" to discovery.  *See* Dkt. 33-1 at 2.

On November 1, 2016, counsel for both parties had a discovery conference call with Judge Burkhardt regarding Plaintiffs' discovery concerns.  Bugaighis Decl. ¶ 5.  Counsel presented their respective positions regarding the scope of appropriate discovery and specifically argued regarding Plaintiffs' requests into GNC's membership pricing.  *Id.*  Counsel for GNC explained Plaintiffs' discovery requests were grossly overbroad and that products outside those purchased by Plaintiffs were not a proper source of discovery.  *Id.*  Judge Burkhardt reserved ruling on any dispute but indicated that she agreed that membership pricing was not within the proper scope of discovery.  *Id.*  Counsel for GNC stated it would serve amended discovery responses on November 10, 2016 and that GNC was working on a sampling proposal in order to avoid a prolonged discovery dispute.  *Id.*  Counsel for

6

GNC stated it was awaiting final approval, but believed GNC would propose each party would pick three products from each of GNC's nine distinct product categories. *Id.* GNC clarified that it believed this sampling would demonstrate to Plaintiffs why discovery into GNC products besides those purchased by Plaintiffs was improper. *Id.* Judge Burkhardt approved of a sampling procedure and encouraged the parties to confer regarding a procedure that was workable for both parties. *Id.* Judge Burkhardt gave the parties until November 21st to confer, thereby providing the parties over a week after Plaintiffs received GNC's amended responses to confer further. *Id.* Judge Burkhardt encouraged the parties to attempt to work through issues without the Court's involvement. *Id.*

Immediately following the conference with Judge Burkhardt, the parties met and conferred regarding a sampling procedure.[2] *Id.* ¶ 6. Plaintiffs appeared receptive but were concerned with choosing products off of the GNC website. *Id.* Instead, Plaintiffs requested a list of all GNC products sold online to facilitate their determination of what products they would want to request for a sampling procedure. *Id.* Defense counsel agreed to consult with GNC regarding the availability of a product list. *Id.* Counsel for GNC explained that they would need final approval from GNC on any sampling procedure but were interested in hearing from Plaintiffs regarding what type of procedure they envisioned. *Id.* Plaintiffs claimed they would need to negotiate regarding the number of products in order to obtain a statistically significant sample. *Id.* GNC explained that the purpose of the sampling proposal was to demonstrate why discovery was inappropriate, not to provide a statistically significant sample for the purposes of class certification. *Id.* GNC stated it had no interest in providing Plaintiffs with copious amounts of GNC data to aid in their attempt to find a factual basis for their claims. *Id.*

---

[2] Plaintiffs omit this conference from their recitation of the parties' meet and confer efforts.

On November 10, 2016, as represented to the Court, GNC significantly amended its discovery responses. *Id.* ¶ 7; *see also* Dkts. 33-13 & 33-14.  In response to requests where GNC had previously agreed to produce documents relating only to the three products purchased by Plaintiffs, GNC now agreed to produce documents regarding all products included in the parties' to be agreed-upon sampling procedure.  Bugaighis Decl. ¶ 7.  GNC also agreed to produce documents regarding its computer systems and general policy documents.  *Id.*  However, GNC was unable to provide an estimate regarding the timing of production until a sampling procedure was agreed upon.  *Id.*  And because GNC had not yet made a production of documents (it made its first production the next day subject to the parties' approved protective order), its interrogatory responses referenced that GNC would supplement to provide responsive bates ranges.[3]  *Id.*  Counsel for GNC continued to attempt to locate a product list to assist Plaintiffs in product selection (one had to be created) and to obtain approval from GNC (which it received).  *Id.* ¶ 8.

GNC heard nothing from Plaintiffs regarding a counterproposal to GNC's sampling procedure.  *Id.* ¶ 9.  Instead, on Friday, November 18, 2016, Plaintiffs sent a letter claiming GNC's responses were deficient and they would move to compel. *Id*. ¶ 11; Dkt. 33-15.  Plaintiffs' letter abandoned any pretense of engaging in meaningful meet and confer discussions and underscored Plaintiffs' fishing attempts. Bugaighis Decl. ¶ 11.  Plaintiffs' proposal was as follows:

> If Defendant believes Request Nos. 1 & 2 to [be] overly burdensome, Plaintiffs are willing accept a copy of the databases which contains responsive information in lieu of requiring Defendant to search for and compile any responsive documents.  This proposal would eliminate Defendant's cost associated with querying such data.

Dkt. 33-15 at 3; *see also* Mem. at 24.

---

[3] GNC is preparing to serve supplemental interrogatory responses providing further information regarding its computer systems and bates ranges.  Bugaighis Decl. ¶ 15.

8

GNC responded on Saturday, November 19, 2016.[4]  Bugaighis Decl. ¶ 12; Dkt. 33-16.  GNC expressed surprise at Plaintiffs' sudden unwillingness to confer on discovery issues.  Bugaighis Decl. ¶ 12; Dkt. 33-16.  GNC also corrected Plaintiffs' assertion that GNC had not provided a proposed sampling methodology and indicated its willingness to continue discussions.  Bugaighis Decl. ¶ 12; Dkt. 33-16 at 2.  Finally, GNC expressed that any action with the Court was premature as the parties had yet to confer again as required by Judge Burkhardt:

> Because Plaintiffs have not adequately engaged in the meet and confer process and have not proposed an alternative for a sampling procedure, a conference with the Court is premature.  It is entirely improper for Plaintiffs to refuse to respond to GNC's sampling procedure and Amended Responses for over a week just to demand a conference with the Court on the last day on which to do so and without the benefit of further discussion.

Dkt. 33-16 at 2; Bugaighis Decl. ¶ 12.

Plaintiffs pressed for a discovery conference regardless.  Bugaighis Decl. ¶ 13.  On November 21, 2016, the parties outlined their discovery positions to this Court.  *Id.*  The Court indicated it would like the parties meet and confer in an attempt to resolve their issues.  *Id.*  However, less than an hour later, Plaintiffs requested a phone call and informed defense counsel that they were not willing to negotiate with GNC regarding sampling, were entitled to discovery regarding all GNC products, and would be filing a motion to compel.  *Id.*  Counsel for GNC expressed regret at Plaintiffs' unwillingness to continue the meet and confer process and informed Plaintiffs that it remained "ready and willing to continue discussions regarding an

---

[4] Plaintiffs claim Mr. Kashima did not timely receive communications from defense counsel on two instances.  Mem. at 10, n.6.  But Plaintiffs failed to reveal that the reason Mr. Kashima did not receive these communications is that defense counsel replied to emails sent by Mr. Kashima's assistant and she had apparently failed to include Mr. Kashima both occasions.  Bugaighis Decl., Exs. A & B.  Regardless, *five* other Plaintiffs' attorneys and Mr. Kashima's assistant were included on all communications.  *Id.* ¶ 10.

appropriate sampling methodology." *Id.*, Ex. C.  GNC is still willing to do so. Plaintiffs then waited a full ***three weeks*** before filing their over length Motion.

## III.   ARGUMENT AND AUTHORITY

### A.   Plaintiffs' Complaint Fails to Plead a Factual Basis Supporting Broad Class Discovery.

Plaintiffs are not entitled to boundless discovery in their attempt to manufacture a class.  Under Rule 26(c), the Court has broad discretion to manage discovery and to minimize the costs and burdens on the parties.  "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly …." *Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998).

Since *Twombly* and *Iqbal*, courts have clearly recognized that class actions must comply with the same minimum pleading requirements under Rule 8(a) to proceed to class discovery.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. C 09-00261 SBA, 2009 WL 605833, at *3 (N.D. Cal. Mar. 9, 2009) (dismissing in part wage-and-hour class action for failing to allege specific facts regarding claims); *Harding v. Time Warner, Inc.*, No. 09-cv-1212-WQH-WMC, 2010 WL 457690, at *5-6 (S.D. Cal. Jan. 26, 2010) (granting motion to dismiss against class action claims for overtime); *Nicholas v. CMRE Fin. Servs., Inc.*, No. 08-4857, 2009 WL 1652275, at *4-5 (D.N.J. June 11, 2009) (granting defendant's Rule 12(e) motion for more definite statement based on insufficient factual basis for conclusory class allegations).  In pleading a class action, plaintiffs are required to come forward with *facts* that plausibly support the existence of a class.  Plaintiffs cannot simply rely on overbroad, conclusory contentions and legal conclusions.  The reason for enforcement of this pleading requirement to class-action allegations is clear.  Without the courts acting as the gatekeeper, any consumer who believes they were wronged could simply allege, without any plausible basis or information, that some vague "policy" or "procedure" exists, and that it is applied to a class of people about whom the plaintiff has no knowledge or information whatsoever.

"A bare allegation of wrongdoing ... is not a fair reason for requiring a defendant to undertake financial burdens and risks to further a plaintiff's case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 363 (1978) (class action against investment fund for allegedly artificially inflating the price of fund shares). Many courts have recognized high pleading standards, such as the broad fraud allegations plead here, require particularized allegations. [5] "[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll.*, 103 F.3d 294, 299 (3d Cir. 1996) (copyright infringement action). "The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim." *Micro Mot., Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990) (patent infringement action) (emphasis in original) (citing cases). "That the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request[.]" *Id.*; *see also Evans v. Calise*, No. 92-cv-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994) ("The party seeking the discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition.") (libel action).

For example, in *Samsung SDI Co. v. Matsushita Electric Industrial Co.*, No. CV 05-8493 AG (SHX), 2007 WL 4328482 (C.D. Cal. May 17, 2007), the court denied defendants' attempt to obtain broad discovery in a patent infringement action:

> The Court also finds unpersuasive Defendants' argument that the discovery sought may lead to the discovery of admissible evidence under Fed. R. Civ. P. 26(b)(1). Defendants' argument is based upon Defendants' unsupported conjecture that products which have not been

---

[5] Plaintiffs' fraud claims are subject to a higher pleading standard under Federal Rule of Civil Procedure 9(b), much like the stringent requirements for pleading copyright or patent infringement.

1
2
3

specifically accused by model name or number may potentially be similar or identical to the Accused Products and speculation, without any evidentiary support, that such products may have been the subject of potentially infringing activity in the United States.

4   *Id.* at *3.  The court found "Defendants' argument that it needs the information rests

5   on its own failure to conduct a reasonable inquiry into the nature of such products."

6   *Id.* at *2.

7       The instant case presents a scenario where Plaintiffs have provided no factual

8   allegations regarding any of the thousands of products sold on GNC.com other than

9   the minimal allegations they provided regarding those products they purchased.

10  Plaintiffs' FAC contains merely conjecture and legal conclusions regarding GNC's

11  alleged conduct, which Plaintiffs wish to use as a basis for discovery regarding the

12  entirety of GNC's pricing practices.

13      Plaintiffs' own claims are extremely limited and cannot be generalized across

14  the entirety of GNC's business.  Plaintiffs allegedly purchased three products at

15  GNC.com: a third-party whey protein powder, a third-party herbal supplement, and a

16  third-party branded protein bar.  FAC ¶¶ 25, 27.  Plaintiffs were able to purchase

17  these items on sale, at prices lower than GNC's advertised regular price.  *Id.* ¶¶ 25,

18  27.  Plaintiffs are not members of GNC's exclusive membership program and thus

19  did not purchase these products at member pricing.  Plaintiffs also did not buy GNC-

20  branded products.  And Plaintiffs have no experience with or knowledge of the

21  pricing for any of the remaining thousands of products sold on GNC.com.

22      Instead, Plaintiffs assert generally that GNC misled customers who purchased

23  ***any*** products online through GNC.com by advertising products at discounted sale

24  prices that were displayed against allegedly false "regular" prices from which the

25  "savings" was discounted.  Plaintiffs claim ***all*** advertised discounts were illusory

26  because the represented "regular" prices were always artificially inflated and were

27  never the original or market prices for products sold through GNC.com.  Plaintiffs

28  seek to represent a class of:

12

All persons in the State of California who, within the applicable statute of limitations preceding the filing of this action, purchased a product from the GNC website at www.gnc.com.

FAC ¶ 41.

But the extent of Plaintiffs' allegations regarding the products **not** purchased by Plaintiffs is that "[t]hese false discounts are not limited to the products that Plaintiff purchased.  Instead, these false and misleading discounts appear on a **large percentage** of GNC's products."  FAC ¶ 34 (emphasis added).  Plaintiffs fail to plead any **facts** regarding any other products on which GNC allegedly misrepresented its pricing and do not attempt to quantify a "large percentage."  Reference pricing in and of itself is **not** a fraudulent pricing scheme.  Plaintiffs cannot simply rely on GNC's use of reference pricing for the sale of some of its online products for the right to investigate **all** GNC products over a four-year time frame.  Plaintiffs did not even attempt to analyze GNC's website to find a single other example of a product they believed to be incorrectly priced.  In fact, Plaintiffs' allegations weigh against a finding that GNC misrepresented price discounts on all of the **six thousand** of products for sale on its website.  Instead, Plaintiffs specifically allege "[s]ale prices are found only on select products, thereby reinforcing the perception that these products are on sale."  FAC ¶ 23.  And Plaintiffs admit GNC's intent regarding its independent pricing of each product is an important factor to their liability.  *See* Mem. at 16-17.  Thus, Plaintiffs have no basis for requesting discovery into **thousands** of GNC products and purchases that they now demand.

Plaintiffs' citation to *Spieker v. Quest Cherokee, LLC*, No. 07-1225-EFM, 2008 WL 4758604 (D. Kan. Oct. 30, 2008), is inapposite.  There the plaintiff sought to represent a class consisting of owners of mineral and/or royalty interests in a Kansas portion of the Cherokee Basin who were allegedly not paid the proper amount of royalties.  *Id.* at *1.  The defendant argued that the cost of the named

plaintiffs' claim did not justify discovery.  *Id*. at *2.  GNC does not make a similar claim.  Instead, GNC has produced documents regarding every customer purchase for a four-year period of the three products specifically detailed in Plaintiffs' FAC.[6]  Plaintiffs' citation to *Barnhart v. Safeway Stores, Inc.*, No. CIV.S-92-0803WBS JFM, 1992 WL 443561, at *3 (E.D. Cal. Dec. 14, 1992), is also contrary to Plaintiffs' position.  That decision was made in the context of an employment class action, where the plaintiffs had alleged a general policy that was uniform based on a common collective bargaining agreement.  *See id*. at *5.  Moreover, the Court in Barnhart approved of a sampling procedure for certain discovery.  *Id*. at *7.

In fact, in Plaintiffs' Motion to Compel, Plaintiffs ***admit*** they have no knowledge of which (if any) other products were "subject to the alleged misrepresented discounts."  Mem. at 13.  Plaintiffs claim "[i]t is only with [documents responsive to Requests 1 and 24] that Plaintiffs ***can determine what products were subject to the alleged misrepresented discounts*** and the extent to which class members were damaged."  *Id*. (emphasis added).  Plaintiffs' fishing expedition to obtain discovery for the entirety of GNC's inventory when they have no facts to support this inquiry is untenable.  This Court should not permit Plaintiffs to impose burdensome and extensive discovery in their attempt to manufacture a class.

**B.  Even If Plaintiffs Plead Claims Related to "Other" Products, Plaintiffs' Discovery Requests Are Unfairly Broad and Burdensome.**

Plaintiffs' discovery, as written, is not reasonably calculated to lead to the discovery of admissible evidence.  In fact, Plaintiffs seem determined to request any and all documents in GNC's possession that could even potentially relate to any

---

[6] GNC was unable to pull customer web sales data for the protein bars allegedly purchased by Plaintiff Carter.  GNC has additionally been unable to verify Plaintiff Carter actually purchased this product.  Plaintiffs' counsel has failed to provide any information that would aid in identifying Ms. Carter's alleged purchase despite being repeatedly informed of the fact that GNC has no record of it.  Bugaighis Decl. ¶ 14.

aspect of GNC's pricing, whether or not reasonably calculated to lead to the discovery of admissible evidence. *See* Dkt. 33-13. And Plaintiffs' own theory of classwide liability—that GNC employs a common unlawful pricing policy for all its products—requires only general policies and procedures that apply to all GNC products, which GNC has already agreed to produce:

> GNC will produce responsive, non-privileged documents that constitute policies and procedures for establishing the PRICE, REGULAR PRICE, or SALE PRICE of online products to the extent GNC relied on those documents to establish the PRICE, REGULAR PRICE, or SALE PRICE of online products from April 2012 to April 2016.

*Id.* at Response to RFPs 7, 9-11, 14, 21.[7]

Plaintiffs' requests boldly ignore any differentiation among any of the ***six thousand*** products GNC sells online, including GNC's proprietary branded products, and the additional products GNC sells at its corporate and franchise stores. Plaintiffs not only fail to limit their requests based on type of product, but seek broad-based burdensome discovery related to all such products, including "proposed" changes to pricing displays, marketing strategies, and advertisements.

For instance, Plaintiffs request that for a period of four years, GNC produce the regular, sale, and member prices at which each and every product GNC sells online and in its corporate and franchise stores was offered at. Dkt. 33-13 at RFPs 1 & 2. This request alone would require GNC to pull information about the prices each product was offered at over each two-month pricing period (which information could vary period to period) as well as investigate what, if any, promotions applied to those products for each period.

---

[7] GNC continues to search for policy documents applicable to online product pricing. Plaintiffs also served a 30(b)(6) Notice of Deposition which GNC intends to respond to and designate witnesses to testify regarding product pricing policies and procedures.

Plaintiffs further demand (for a four-year period) "all documents and data relating to":

- GNC's establishment of sale, regular, and membership pricing of every GNC product (for every pricing period);

- "Changes or proposed changes" to any GNC pricing determination;

- GNC's online pricing display;

- "changes or proposed changes" to GNC's online pricing display;

- sales and marketing strategies for discounted online products;

- "changes or proposed changes" to the marketing or advertising of discounted online products;

- the effectiveness and/or financial effect of discounts and/or marketing;

- the pricing of competitors for any and all GNC products;

- manufacturing costs for online products;

- marketing materials and advertisements;

- customer and regulatory complaints regarding discounts;

- all contracts with suppliers and manufacturers of online products;

- revenue from online sales;

- data models of customer databases;

- policies and/or terms and conditions governing customer transactions;

- all online and in-store price and profitability comparisons.

*Id.* at RFPs 3-41, 43.  In the parties' meet and confer, Plaintiffs explained that Request 26 alone required the production of screenshots and/or logs regarding ***every time*** the pricing display for ***any*** GNC product changed online.  Bugaighis Decl. ¶ 4. Plaintiffs further demand the identity of each customer who purchased a product

16

with a regular price online,[8] all documents related to GNC's compliance with state and federal law (which they dispute is equivalent to GNC's defense in this case), and hardware/software configurations of each GNC computer and database.  Dkt. 33-13 at RFPs 23-24, 42.  Even if Plaintiffs had made factual allegations under which class discovery beyond the products purchased was appropriate, Plaintiffs' discovery requests are extraordinarily broad.  And when applied over six thousand total products that GNC sells online alone, the discovery sought by Plaintiffs is almost incomprehensible.  For example:

**Plaintiffs' Requests for "Changes to" or "Proposed Changes to."**  Plaintiffs' requests for "changes to" or "proposed changes to" its pricing determinations, online pricing display, and marketing and advertising contemplates discovery of virtually all internal communications ever had about any of the thousands of products sold by GNC, which would require innumerable hours to review prior to production.  Clearly such discovery is not reasonably contemplated by the Federal Rules and goes far beyond what is necessary here for Plaintiffs to seek certification of their purported class.

**Plaintiffs' Requests for ESI.**  Plaintiffs' discovery requests regarding GNC's computer systems and databases go beyond what is permitted or allowed.  In fact,

---

[8] Plaintiffs in their Motion indicate they will not seek the identity of customers at this stage, reserving the right to seek such information after class certification.  To be clear, GNC would oppose any request for discovery of the identity of class members prior to class certification.  The Ninth Circuit has affirmed the denial of a request for production of the names of putative class members "to solicit support" for a plaintiff's efforts to certify a class.  *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985).  Indeed, "[c]ourts have ordinarily refused to allow discovery of class members' identities at the precertification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification."  *Dziennik v. Sealift, Inc.*, No. 05-CV-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) (denying production of unredacted documents identifying class members); *see also In re Mortgagors of Temple-Inland Mortg. Corp.*, No. Civ. A. 99-CV4633, 2001 WL 177181, at *2 (E.D. Pa. Jan. 24, 2001); *Buycks-Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 338, 342 (N.D. Ill. 1995); *Flanigan v. Am. Fin. Sys. of Ga.*, 72 F.R.D. 563, 563 (M.D. Ga. 1976); and *Crabtree v. Hayden, Stone Inc.*, 43 F.R.D. 281, 282-83 (S.D.N.Y. 1967).

17

they go beyond even what is contained in the Northern District ESI Guidelines. Plaintiffs request "All DOCUMENTS and DATA that REFER or RELATE to all 'data models' of each database ...." Dkt. 33-13 at RFP 43.  Despite Plaintiffs' overreaching requests, GNC, in an effort to reach a compromise, agreed to provide information detailing the parameters of its computer systems and databases to the extent it could.  GNC agreed to provide this information to demonstrate the type of systems GNC utilizes and to illustrate to Plaintiffs that such systems are not as easily queried as they presume.  GNC believes that this discovery will show that data is not easily compiled or extractable, requiring individual screenshots of each responsive page.

Plaintiffs also claim a simple search of GNC's databases will cause the above data to materialize.  But Plaintiffs' argument goes only to the *burden* associated with such production, not to the *overbreadth* of Plaintiffs' requests.  GNC's objections relate to the overbreadth of the requests against the lack of factual allegations in Plaintiffs' complaint and the number of products for which such discovery is requested.  Simply because GNC may be able to obtain the information in question does not mean that Plaintiffs are entitled to it.  Plaintiffs' requests for access to GNC's databases are a blatant attempt to fish for information that may substantiate their unsupported class allegations.

***Plaintiffs' Requests for GNC Policies and Procedures.***  Plaintiffs insist upon production of not only GNC's policies and procedures relied on for pricing of the products purchased, which GNC has agreed to produce, but "[a]ll documents and data relating" to "current and legacy policies and procedures," irrespective of product-type or source. Dkt. 33-13 at RFP 7.  Further, Plaintiffs assert they are "entitled" to all drafts (regardless of whether they were implemented) and policies (regardless of whether they applied).  Mem. at 25-26.  Such information again would require GNC to delve into each of the various groups responsible for making pricing determinations and produce any and all discussions about, or drafts of changes to

18

such policies and procedures, despite the fact that such procedures were never implemented, and thus could have no effect on decisions made by consumers that make up the purported class.

*GNC's Legal Compliance.*  Plaintiffs request all documents demonstrating GNC's "compliance with federal or state laws and regulations regarding the advertisement of discount prices" on GNC.com.  Dkt. 33-13 at RFP 23.  GNC offered to produce all documents it will use in its defense to show that it complied with federal and state laws.  Plaintiffs do not explain how GNC's proposal is inadequate.  Mem. at 26.

*Membership pricing.*  Plaintiffs concede their claims do not implicate membership pricing yet argue this information is nevertheless discoverable because "information regard [sic] various prices at which Defendants offer their products are relevant to Plaintiffs' claims."  Mem. at 27.  But as explained above, access to GNC's membership prices are due to certain customers' purchase of *memberships*, which enables GNC to offer lower prices to those individuals.  Accordingly, such information is wholly irrelevant to Plaintiffs' claims here.

*GNC Branded Products.*  GNC manufactures and sells its own proprietary GNC-branded products.  Because GNC does not purchase these products from a third party, it is able to pass greater cost savings to GNC customers.  Thus, GNC-branded product pricing is not similarly situated to third-party product pricing.  Further, Plaintiffs did not purchase any GNC-branded products.

## C.  GNC's Responses and Production Are Reasonable.

As explained above, GNC initially limited its production to documents regarding the products purchased by Plaintiffs.  However, in an effort to avoid discovery disputes and in order to demonstrate to Plaintiffs that the pricing for other GNC products is not similarly situated to those alleged in the FAC, GNC also agreed to produce documents regarding agreed-upon products as part of a sampling procedure.  Plaintiffs continue to insist on obtaining all discovery requested.  But

Plaintiffs' motion (and Mr. Kashima's declaration) reflects a lack of attention to what they have already received in their overzealous attempt to obtain invasive discovery as to all GNC products.

**Document Productions.**  GNC has made four productions of documents: November 11, 2016, November 28, 2016, December 13, 2016, and January 10, 2017. Mr. Kashima claims most of GNC's document production is spreadsheets of "unknown significance."  Dkt. 33-2 ¶¶ 20, 25.  He also claims GNC produced a mere eight responsive documents.  Yet one of these spreadsheets is four years of sales data (both in-store and online) for the three products Plaintiffs' purchased.  Bugaighis Decl. ¶ 16.  Others include pricing data for the three products over the same four-year period and the product lists Mr. Kashima claims GNC never produced.  *Compare* Dkt. 33-2 ¶ 19 *with* Bugaighis Decl. ¶ 16.  Thus, directly contrary to what Mr. Kashima represents, GNC proposed a sampling procedure, produced lists of products from which Plaintiffs could select a sample, and were ready and willing to confer further at any time.  Bugaighis Decl. ¶ 16.  In fact, GNC had to specially create the product lists as Plaintiffs requested (GNC felt its website had a sufficient product listing).  GNC continues to collect and produce documents.  GNC is also ready and willing to continue to discuss a sampling procedure with Plaintiffs at any time.

**Interrogatories.**  As described above, GNC served its amended interrogatory responses prior to making a document production due to the timing of the signed protective order.  GNC is preparing to serve supplemental interrogatory responses to include the responsive bates ranges.  *Id.* ¶ 15.  GNC will continue to do so throughout discovery as necessary.

**Attorney-Client Privilege.**  Plaintiffs claim that because GNC did not produce a privilege log with its objections, it waived its privilege, is absurd.  GNC has not waived its attorney-client privilege and work product privileges.  The Ninth Circuit specifically rejected "a per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30–day time limit." *Burlington N. &*

*Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005).  As GNC produces documents, it will log those documents withheld based on privilege, if any, on a privilege log.  GNC has yet to withhold documents on this basis but reserves this objection in the instance it discovers responsive documents subject to privilege.

### D.    Sampling Is Appropriate if Discovery Is Ordered.

"[I]n the specific context of class-action discovery, sampling advances the goal of proportionality set forth in Fed. R. Civ. P. 26(b)(3)(C)(iii)."  *Feske v. MHC Thousand Trails Ltd. P'ship*, No. 11-CV-4124-PSG, 2012 WL 1123587, at *2 (N.D. Cal. Apr. 3, 2012) (footnote omitted).  Thus, "[t]o relieve the burden on a party, a court may order a 'sampling' of records."  *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 503-04 (E.D. Cal. 2012) (citing *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357-58 (S.D. Oh. 2006) ("limiting discovery to a statistically significant representative sampling ... will both reasonably minimize the otherwise extraordinary burden imposed"); *Barnhart*, 1992 WL 443561, at *7 (finding "sampling is a reasonable compromise" and ordering the defendant to submit a proposed sampling method to the plaintiff); *Cranney v. Carriage Servs., Inc.*, No. 2:07-cv-1587, 2008 WL 2457912 (D. Nev. June 16, 2008) (ordering the parties to identify "ten percent of a relevant combination of workers and work sites," and limiting discovery to those identified"); *Smith v. T-Mobile USA, Inc.*, No. CV 05-5274, 2007 WL 2385131, at *4-5 (C.D. Cal. Aug. 15, 2007) (in the discovery process, plaintiff "sampled" ten percent of the defendant's store managers and corporate employees).

Plaintiffs' argument that producing data responsive to a sampling procedure will be just as burdensome as producing data regarding all of GNC's thousands of products is nonsensical.  *See* Mem. at 24-25.  Simply put, a sampling procedure, by definition, would require GNC to produce data only as to a subset of its entire product line.  Thus, GNC would not "have to examine the same transaction, pricing,

and sales data that was requested in Requests Nos. 1 and 24." *Id.* at 25. Plaintiffs' oversimplification of the discovery they seek as "the total number of purchases made subject to the alleged misrepresentation, the identity of these products, and the total value of these advertised discounts," *id.*at 24, is belied by their expansive discovery requests that they argue are necessary for class certification. And as Plaintiffs point out, the parties must also analyze data to determine whether for each product, during each period, GNC had the "intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." *See* Cal. Bus. & Prof. Code § 17500.

Here, if the Court finds information regarding products other than those specifically plead by Plaintiffs is discoverable, sampling is an appropriate method to relieve the burden imposed upon GNC given the number of products involved. In this way, Plaintiffs will be able to "test the veracity of Defendants' claims," Mem. at 22 n.15, without a free pass at an extremely broad fishing expedition.

## IV.   THE COURT SHOULD STRIKE THE FORREST DECLARATION AS IMPROPER HEARSAY

GNC moves to strike the Declaration of Douglas E. Forrest as lacking personal knowledge and relying on inadmissible hearsay. Considering the contents of an affidavit based in inadmissible hearsay is improper. An affidavit not based on personal knowledge and in reliance on unsworn statements does not comply with the federal rules. *Block v. City of L.A.*, 253 F.3d 410, 419 (9th Cir. 2001); *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990).

Mr. Forrest claims to submit his declaration to "address the ready availability of price data and the lack of any substantial burden in producing this data for all products rather than for only 27 products." Dkt. 33-18 ¶ 5. Yet Mr. Forrest admits he has no personal knowledge of GNC's applications, platforms, computer systems, or databases (and no personal knowledge of Plaintiffs' discovery). *Id.* ¶ 11. Instead, Mr. Forrest relies on what "typical" systems might be able to do and alleged job

postings and news articles.  *Id.* ¶¶ 8, 10.  Mr. Forrest's declaration is speculation (at best) and this Court should strike it from consideration.

## V.   CONCLUSION

Plaintiffs have no right to impose continued burdens and expenses on GNC in an attempt to substantiate their baseless class allegations.  For these reasons, GNC respectfully asks the Court deny Plaintiffs' Motion to Compel.


DATED: January 11, 2017                    DAVIS  WRIGHT  TREMAINE  LLP


                                           By:_____*s/ Zana Bugaighis*_____
                                               JAMES D. NGUYEN
                                               SEAN M. SULLIVAN
                                               ZANA BUGAIGHIS


                                           Attorneys for Defendants
                                           General Nutrition Centers, Inc. and
                                           GNC Holdings, Inc. (erroneously
                                           named as General Holdings, Inc.)

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of California by using the Court's CM/ECF system on January 11, 2017.  I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the district's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this certificate was executed at Seattle, Washington on January 11, 2017.

*/s/ Anita A. Miller*
Anita A. Miller

GNC'S OPPOSITION TO PLAINTIFFS' MOTION
TO COMPEL (3:16-cv-00990-WQH-AGS)