EXHIBIT A

**SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS**

This Settlement Agreement and Release of Claims is entered into as of the last date of any signature below by and among: (a) General Nutrition Centers, Inc. and GNC Holdings, Inc. (collectively "GNC" or "Defendants"), and (b) Plaintiffs Kim Carter, Ashley Gennock, Kenneth Harrison, Jenna Kaskorkis, and Daniel Styslinger, individually and as the representatives of the proposed Settlement Class, in consideration for and subject to the promises, terms, and conditions contained herein.

This Agreement is subject to Court approval pursuant to Rule 23 of the Federal Rules of Civil Procedure. In addition to the terms defined parenthetically elsewhere in this Agreement, all capitalized words and terms used herein shall have the meanings ascribed to them in Section II of this Agreement, entitled "Definitions."

This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## I.    RECITALS

A.    WHEREAS, Representative Plaintiffs filed three lawsuits against GNC under the captions *Kaskorkis v. General Nutrition Centers, Inc. and General Holdings, Inc.*, No. 3:16-cv-00990-WQH-AGS (S.D. Cal.), *Gennock v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, No. 2:16-cv-00633-MRH (W.D. Pa.), and *Harrison v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, No. 3:16-cv-03086-WQH-AGS (S.D. Cal.).

B.    WHEREAS, on or about April 22, 2016, Plaintiff Jenna Kaskorkis filed a putative class action lawsuit against General Nutrition Centers, Inc. and GNC Holdings, Inc., erroneously named as General Holdings, Inc., in the United States District Court for the Southern District of California, under the caption *Kaskorkis v. General Nutrition Centers, Inc. and General Holdings, Inc.*, No. 3:16-cv-00990-WQH-AGS (S.D. Cal.) ("*Kaskorkis*"), which asserted alleged violations of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 et seq.) (the "FAL"), California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) (the "UCL"), and California's Consumers Legal Remedies Act (Cal. Code Civ. Pro. § 1750 et seq.) (the "CLRA") in connection with GNC's alleged misrepresentation of the existence, nature, and amount of price discounts on products for sale on its website, www.GNC.com, causing putative class members to purchase products without receiving the discount as advertised. (*Kaskorkis* ECF No. 1). The complaint was amended on August 8, 2016, adding allegations regarding additional Plaintiff Kim Carter, and GNC's failure to respond to Plaintiff Kaskorkis' CLRA demand pursuant to California Civil Code § 1782(a) (*Kaskorkis* ECF No. 10). GNC filed an answer to both the initial and amended complaint filed in *Kaskorkis*, denied all allegations and asserted numerous affirmative defenses (*Kaskorkis* ECF Nos. 8 and 21).

C.    WHEREAS, on or about May 17, 2016, Plaintiff Ashley Gennock filed a putative class action against GNC in the United States District Court for the Western District of Pennsylvania, under the caption *Gennock v. General Nutrition Centers, Inc. and GNC Holdings,*

*Inc.*, No. 2:16-cv-00633-MRH (W.D. Pa.) ("*Gennock*"), which asserted alleged violations of Pennsylvania's Unfair Trade Practices & Consumer Protection Law (73 Penn. Stat. §§ 201-1, et seq.) ("UTPCPL") and similar state consumer protection statutes, as well as unjust enrichment in connection with GNC's alleged misrepresentation of the existence, nature, and amount of price discounts on products for sale on its website, www.GNC.com, causing putative class members to purchase products without receiving the discount as advertised (*Gennock* ECF No. 1).  GNC filed an answer to the complaint filed in *Gennock*, denied all allegations and asserted numerous affirmative defenses (*Gennock* ECF No. 18).

D.     WHEREAS, on or about December 23, 2016, Plaintiff Kenneth Harrison filed a putative class action lawsuit against GNC in the United States District Court for the Southern District of California, under the caption *Harrison v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, No. 3:16-cv-03086-WQH-AGS (S.D. Cal.) ("*Harrison*"), which asserted alleged violations of the FAL, the UCL, and the CLRA in connection with GNC's alleged misrepresentation of the existence, nature, and amount of price discounts on products for sale on its website, www.GNC.com, causing putative class members to purchase products without receiving the discount as advertised (*Harrison* ECF No. 1). The complaint was amended on January 1, 2017 (*Harrison* ECF No. 5).

E.     WHEREAS, the parties in the *Kaskorkis* action engaged in extensive litigation and motion practice, conducted both formal and informal discovery, including the exchange of an extensive volume of material from GNC, designation of experts, and which resulted in multiple motions to compel by the parties related to such discovery.

F.     WHEREAS, on December 22, 2016, the *Gennock* plaintiffs attended an in-person mediation with GNC in Pittsburgh, Pennsylvania with the experienced and well respected mediator Carole Katz (www.carolekatz.com).  While the parties did not reach a settlement at the mediation, the parties continued to engage in further settlement discussions through Ms. Katz following the mediation session.

G.     WHEREAS, on July 19, 2017, the *Kaskorkis* plaintiffs and *Gennock* plaintiffs attended a second joint mediation with GNC in Pittsburgh, Pennsylvania with Ms. Katz.  Again, while the parties did not reach a settlement, they continued to engage in further settlement discussions through Ms. Katz, while continuing to litigate.

H.     WHEREAS, on June 24, 2019, Representative Plaintiffs filed an amended complaint in *Gennock* (*Gennock* ECF 62).

I.     WHEREAS, this Agreement was reached as a result of extensive arm's-length negotiations between the Parties and their counsel, occurring over the course of several months and two (2) in-person mediation sessions with a respected mediator, Carole Katz.  Before and during these settlement discussions and mediations, the Parties had an arm's-length exchange of sufficient information to permit Representative Plaintiffs and their counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.

J.      WHEREAS, GNC denies the material allegations in the Actions and denies all liability with respect to the facts and claims alleged in the Actions.  Nevertheless, without admitting or conceding any liability whatsoever, and while continuing to deny that the claims asserted in the Actions would be appropriate for class treatment if prosecuted at trial, GNC now desires to settle the Actions on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation and to put to rest all claims that were, or could have been, brought in the Actions or in similar litigation based on the facts alleged in the Actions.

K.      WHEREAS, Class Counsel have analyzed and evaluated the merits of all Parties' contentions, the risks that the Court might not certify a class, and the impact of this Agreement on the members of the Settlement Class, as defined below.  Based on that analysis and evaluation, and recognizing the risks of continued litigation and the likelihood that the Actions, if not settled now, may be protracted and will further delay any relief to the proposed class, Representative Plaintiffs, and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and equitable, and that a settlement of the Actions on the terms described herein is in the best interests of the proposed Settlement Class.

NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement, the Parties, for themselves and through their undersigned counsel, agree to the following settlement, subject to Court approval, under the following terms and conditions.

## II.    DEFINITIONS

In addition to the terms defined parenthetically elsewhere in this Agreement, the following definitions apply to this Agreement.

1.      "Actions" mean, collectively, the civil actions entitled *Kaskorkis v. General Nutrition Centers, Inc. and General Holdings, Inc.*, No. 3:16-cv-00990-WQH-AGS (S.D. Cal.), *Gennock v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, No. 2:16-cv-00633-MRH (W.D. Pa.), and *Harrison v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, No. 3:16-cv-03086-WQH-AGS (S.D. Cal.).

2.      "Aggregate Individual Relief Value" means the total value of all cash payments and all Vouchers claimed by all Eligible Claimants as described more fully in Paragraph 26.d. below.

3.      "Agreement," "Settlement," or "Settlement Agreement" means this Settlement Agreement and Release of Claims and the settlement embodied herein, including all attached Exhibits (which are an integral part of this Settlement Agreement and Release and are incorporated in their entirety by reference), including all subsequent amendments agreed to in writing by the Parties and exhibits to such amendments.

4.      "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(d).

3

5.       "Cash Election Total" means the total aggregate dollar value of all Eligible Claimants' claims for cash pursuant to the Individual Relief, as adjusted pursuant to Paragraph 74 below.

6.       "Claim Deadline" means the final time and date by which a Claim Form must be received by the Settlement Administrator in order for a Settlement Class Member to be entitled to any of the settlement consideration contemplated in this Agreement, which shall be seventy-five (75) days after entry of the Preliminary Approval Order.

7.       "Claim Form" means the form made available to Settlement Class Members substantially in the form of **Exhibit A** hereto. The Claim Form must be submitted physically (*via* U.S. Mail) or electronically (*via* the Settlement Website) by Settlement Class Members who wish to submit a claim to receive cash payment(s) or Voucher(s) pursuant to the terms and conditions of this Agreement.

      a.       The Claim Form shall require all Claimants to:

         i.       Provide their name and e-mail address from which they made their purchases from GNC's Website; and

         ii.       Attest under penalty of perjury to the best of their knowledge to: (i) having purchased a product during the Class Period on sale or through a promotion from GNC's Website; (ii) not applying a coupon to that purchase; and (iii) never returning that purchase for a refund.

      b.       In addition, the Claim Form shall require Claimants who are Multiple Purchasers and claiming the Multiple Purchaser Relief to:

         i.       Submit a proof of purchase for each transaction they contend qualifies them to be a Multiple Purchaser; and

         ii.       Attest under penalty of perjury to the best of their knowledge to: (i) not applying a coupon to any purchase which qualifies them to be a Multiple Purchaser; and (ii) never returning any of such purchases for a refund.

      c.       In addition, the Claim Form shall comply with the terms and conditions of Paragraph 96.e. herein.

8.       "Claimant" means a Settlement Class Member who submits a Claim Form.

9.       "Class Counsel" means Ahdoot & Wolfson, PC; Finkelstein & Krinsk LLP; Barbat, Mansour & Suciu PLLC; Carlson Lynch Sweet Kilpela & Carpenter, LLP; and Nathan & Associates, APC.

10. "Class Notice" means the notice provided to the Settlement Class of the class action status and proposed settlement of the Action. The Class Notice shall consist of the Summary Notice and Long-Form Notice.

11. "Class Member Information" means the name, e-mail and physical address of each Settlement Class Member that GNC will provide pursuant to Paragraph 95.a. below.

12. "Class Period" means January 1, 2012, through and including the date of Preliminary Approval.

13. "Consolidated Class Action Complaint" means the First Amended Complaint filed in *Gennock* on June 24, 2019 (*Gennock* ECF No. 62).

14. "Coupon" means a unique code that will be sent to each Settlement Class Member that may be redeemed as a one-time credit in the amount of thirty dollars ($30) off of a purchase otherwise totaling one hundred dollars ($100) or more of Merchandise through GNC's Website only. Coupons are subject to the following terms and conditions: (a) Coupons are fully transferrable; (b) no individual may redeem more than one (1) Coupon; (c) Coupons will expire no earlier than seven (7) days prior to the Settlement Hearing; (d) Coupons may not be combined with other coupon(s) except that Coupons may be used on any Merchandise offered to the general public on promotion or at a discount; and (e) Coupons have no independent monetary value.

15. "Court" means the United States District Court for the Western District of Pennsylvania and the Judge assigned to the *Gennock* action (the Honorable Mark R. Hornak).

16. "Effective Date" means the first date on which all of the following have occurred:

    a. The Court has entered the Settlement Order and Final Judgment;

    b. The Court has made its Service Payments and award of Attorneys' Fees and Expenses; and

    c. Thirty-one (31) days have passed after entry of the Settlement Order and Final Judgment by the Court in the *Gennock* action without any appeals or requests for review of the Court's Settlement Order and Final Judgment being filed, or, if appeals or requests for review have been filed, the time has passed for seeking further review after orders on appeal affirming the Settlement Order and Final Judgment, or review has been denied after exhaustion of all appellate remedies.

17. "eCheck" means an electronic check used to pay a Settlement Class Member's Individual Relief, which will be sent to the e-mail address provided by the Settlement Class Member in his or her valid Claim Form.

18.     "Eligible Claimant" means a Settlement Class Member who complies fully with the claims submission requirements set forth in Paragraph 7 above, and Paragraphs 113 through 118 below, including the requirements of timely and complete submission.

19.     "Escrow Account" means the escrow account to be administered by the Settlement Administrator to receive cash amounts GNC is required to pay under the terms of this Settlement as set forth in Paragraph 75 below.

20.     "Fairness Hearing" or "Settlement Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (a) entering the Settlement Order and Final Judgment; (b) determining whether the Settlement should be approved as fair, reasonable, and adequate; (c) ruling upon an application for Service Payments by the Plaintiffs; (d) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (e) entering any final order awarding Attorneys' Fees and Expenses and Service Payments.  The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. §1715(d).

21.     "Fee and Expense Award" means such funds as may be approved and awarded by the Court to Class Counsel to compensate them for conferring the benefits upon the Settlement Class under this Agreement and for their professional time, fees, costs, advances, and expenses incurred in connection with the Actions and the Settlement.

22.     "Fee Application" means Class Counsel's application for the Fee and Expense Award.

23.     "GNC" or "Defendants" means collectively General Nutrition Centers, Inc. and GNC Holdings, Inc.

24.     "GNC's Counsel" means Sean M. Sullivan and Zana Bugaighis of Davis Wright Tremaine LLP.

25.     "GNC's Website" means the website located at www.GNC.com, including all versions optimized for viewing on a wireless or tablet device.

26.     "Individual Relief" means the relief to be distributed to the Eligible Claimants as follows:

a.      Single Purchaser Relief.  Any Eligible Claimant who submits a timely and valid Claim Form shall receive, at their election, either: (i) a cash payment of $5.00, or (ii) a Voucher worth $15.00.  Proof of purchase is not required to obtain this relief.

b.      Multiple Purchaser Relief.  In addition to the Single Purchaser Relief set forth in Paragraph 26.a. above, in the event an Eligible Claimant is a Multiple Purchaser, and submits a timely and valid Claim Form, then that Eligible Claimant shall also receive, at their election, either (i) one (1) cash payment of $5.00 (in addition to the Single Purchaser Relief), or (2) a Voucher worth $15.00 (in addition to the Single Purchaser Relief).

      c.      Each Eligible Claimant, if eligible for Multiple Purchaser Relief, is limited to no more than a total of either: (i) two (2) cash payments of $5.00; (ii) two (2) Vouchers worth $15.00; or (iii) one (1) cash payment of $5.00 and one (1) Voucher worth $15.00. No individual may redeem more than two (2) total Vouchers.

      d.      The sum of (i) the total amount of all cash payments elected by all Eligible Claimants pursuant to Paragraphs 26.a. and 26.b. above, and (ii) the total dollar amount of all Vouchers elected by all Eligible Claimants pursuant to Paragraphs 26.a. and 26.b. above, shall be referred to herein as the "Aggregate Individual Relief Value."

      e.      The amount of each individual cash payment and the dollar amount of each Voucher available to Eligible Claimants pursuant to Paragraphs 26.a. and 26.b. above are subject to possible *pro rata* adjustment, up or down, as described in Paragraph 74, below.

27.      "Initial Deposit" means the cash sum of One Hundred Twenty Nine Thousand Nine Hundred Fifteen Dollars ($129,915.00) GNC shall pay to the Settlement Administrator for the initial notice and administration expenses that will be incurred to provide notice to the Settlement Class Members and CAFA Notice, setup and establish the Settlement Website, and other initial administration tasks.

28.      "Long-Form Notice" means the long form notice of settlement, substantially in the form attached hereto as **Exhibit B**.

29.      "Merchandise" means any item sold on GNC's Website.

30.      "Multiple Purchaser" means an Eligible Claimant who made either: (i) a total of five (5) or more purchases (each such qualifying purchase must have been made in a unique transaction on a day separate from any other qualifying transaction) from GNC's Website within the Class Period; or (ii) a purchase in excess of $100.00 in a single transaction from GNC's Website during the Class Period.

31.      "Multiple Purchaser Relief" means the remuneration defined in Paragraph 26.b. herein.

32.      "Net Settlement Fund" means the balance remaining in the Settlement Fund after payment of (a) Settlement Administration Expenses, (b) the Service Payments, and (c) the Fee and Expense Award.

33.      "Notice Date" means the first date upon which the Class Notice is disseminated.

34.      "Notice Plan" means the method and process of disseminating the Class Notice and notice of the Settlement as described in Paragraphs 92 to 96.

35.      "Objecting Attorneys" means any and all attorneys representing, advising, or in any way assisting any objecting Settlement Class Member in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection.

36.     "Opt-Out and Objection Deadline" means the date that is seventy-five (75) days after the entry of the Preliminary Approval Order, or any other date set by the Court, by which a person in the Settlement Class must opt out of the Settlement or make any objection to the proposed Settlement, the Fee Application, and/or the Service Payment Application, in accordance with the procedures set forth herein and/or in any order of the Court.

37.     "Parties" means Representative Plaintiffs and GNC.

38.     "PayPal Account" means an Eligible Claimant's account with PayPal, as optionally identified by the Eligible Claimant in a timely and valid Claim Form, to which any cash owed to the Settlement Class Member, by virtue of any election made on a valid Claim Form, can be paid.

39.     "Periodic Payments" means amounts invoiced by the Settlement Administrator and approved by Class Counsel and GNC's Counsel for reasonable Settlement Administration Expenses incurred after GNC's payment of the Initial Deposit.

40.     "Preliminary Approval" means the Court in the *Gennock* action has entered the Preliminary Approval Order.

41.     "Preliminary Approval Date" means the date on which the Preliminary Approval Order is entered by the Court.

42.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Class Notice and Notice Plan, substantially in the form attached hereto as **Exhibit C**.

43.     "Redeemed Coupon" means those Coupons that have been submitted to GNC for redemption, and redeemed by GNC prior to the date that is seven (7) days before the date of the Fairness Hearing. Not later than seven (7) days before the date of the Fairness Hearing, GNC shall cause to be filed with the Court a document, executed under penalty of perjury, attesting to the total dollar value of the Redeemed Coupons.

44.     "Redeemed Coupon Credit" means the aggregate dollar amount of all Redeemed Coupons.

45.     "Released Claims" means during the Class Period  (i) any and all claims, rights (including rights to restitution or reimbursement), demands, actions, causes of action, suits, liens, damages, attorneys' fees, obligations, contracts, liabilities, agreements, costs, expenses, or losses of any nature or description whatsoever; (ii) whether known or unknown, direct or indirect, matured or unmatured, contingent or absolute, existing or potential, suspected or unsuspected, equitable or legal, individual or representative; and (iii) whether based on or under federal statutory law, federal common law or federal regulation, or the statutes, constitutions, regulations, ordinances, common law, or any other law of any and all states or their subdivisions, parishes or municipalities that (a) arise out of or relate in any way to allegations set forth in the Actions, which, for the avoidance of doubt includes GNC's alleged discounting of its

8

Merchandise from a regular or original price, advertising of those discounts, and GNC's sales of Merchandise on GNC's Website; or (b) that have been, or could have been, brought in the Actions and arose out of the same nucleus of operative facts as any of the claims asserted in the Actions. GNC reserves the right to seek contribution or indemnity from any third party(ies). In addition, with respect to Representative Plaintiffs only, "Released Claims" includes all claims arising, or that could arise in the future, out of any conduct or omissions occurring as of the Preliminary Approval Date that might be attributable to any of the Released Parties, except with regard to any personal injury damages that may arise in the future that might be attributable to GNC.

46.     "Released Parties" means GNC, including their affiliates, parents, direct and indirect subsidiaries, agents, insurers, and any company or companies under common control with any of them, and each of their respective predecessors, successors and assigns, past and present officers, directors, managers, employees, agents, servants, accountants, attorneys, advisors, shareholders, members, insurers, representatives, partners, vendors, issuers, or anyone acting on their behalf.

47.     "Releasing Parties" means Representative Plaintiffs, those Settlement Class Members who do not timely opt out of the Settlement Class and who are included among the Class Member Information, and all of their respective present or past heirs, executors, estates, predecessors, successors, assigns, administrators, affiliates, parents, direct and indirect subsidiaries, agents, insurers, and any company or companies under common control with any of them, and each of their respective predecessors, successors, past and present officers, directors, managers, employees, agents, servants, accountants, attorneys, advisors, shareholders, members, insurers, representatives, partners, vendors, issuers, and assigns, or anyone acting on their behalf.

48.     "Representative Plaintiffs" means the Plaintiffs in the Actions:  Kim Carter, Ashley Gennock, Kenneth Harrison, Jenna Kaskorkis, and Daniel Styslinger.

49.     "Residual Funds" means the amount of the cash payments distributed to Eligible Claimants (if any) that is not paid to their bank accounts via eCheck, if applicable, or by their PayPal Accounts.

50.     "Service Payment" means the payment to each Representative Plaintiff, in an amount approved by the Court, for their time and effort in connection with these Actions, in recognition of the time and effort the Representative Plaintiffs expended in pursuing these Actions and in fulfilling their obligations and responsibilities as class representatives, and of the benefits conferred on all Settlement Class Members by the Settlement.

51.     "Service Payment Application" means Class Counsel's application for Service Payments to the Representative Plaintiffs.

52.     "Settlement" means the settlement embodied in this Agreement, including all attached Exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference).

53.     "Settlement Administration" means the process under the Court in the *Gennock* Action's supervision that includes, but is not limited to, tasks described in Paragraphs 107 to 124.

54.     "Settlement Administration Expenses" means any and all reasonable fees, costs, and charges incurred, charged, or invoiced by the Settlement Administrator relating to the administration and notice of the Settlement, including but not limited to: (i) the costs and expenses that are associated with disseminating the notice to the Settlement Class, including, but not limited to, the Class Notice and the performance of the Notice Plan; (ii) the costs of sending CAFA Notice; (iii) the costs and expenses that are associated with the maintenance of the Settlement Fund as provided in this Agreement, if any; (iv) the payment of Taxes, if any; and (v) the costs and expenses of the distribution of the Settlement Fund to Settlement Class Members pursuant to terms and conditions herein.

55.     "Settlement Administrator" means the qualified third-party administrator agreed to by the Parties and approved and appointed by the Court in the Preliminary Approval Order to administer the Settlement, including providing the Class Notice.  The Parties agree to recommend that the Court appoint Angeion Group as Settlement Administrator to: (a) design, consult on, and implement the Class Notice and related requirements of this Agreement; and (b) implement the Class Notice, the Settlement Website (www.OnlinePriceSettlement.com), the submission and review of Claim Forms, and related requirements of this Agreement, subject to the Court's approval.

56.     "Settlement Class" means all persons and entities who, from January 1, 2012, through and including the Preliminary Approval Date purchased any product on sale or through a promotion from GNC's Website. The Settlement Class does not include GNC, any affiliate, parent, or direct or indirect subsidiary, or any entity that has a controlling interest therein, or their current or former directors, officers, managers, employees, partners, advisors, counsel, and their immediate families.  The Settlement Class also does not include any persons who validly request exclusion from the Settlement Class.

57.     "Settlement Class Member(s)" means any person or entity meeting the definition of the Settlement Class who does not timely and properly opt out of the Settlement Class pursuant to terms and conditions for opting out set out in Paragraphs 97 to 99 of this Agreement and in the Class Notice.

58.     "Settlement Fund" means the Six Million Dollars and No Cents ($6,000,000) in monetary consideration that GNC will make available and pay (either in the form of cash, Vouchers, and/or Coupons), pursuant to Paragraphs 72 to 75 of this Agreement, as part of the consideration for the release of all claims as provided in this Agreement, which represents GNC's total monetary liability under this Agreement.

59.     "Settlement Order and Final Judgment" means the Court's order and judgment fully and finally approving the Settlement and dismissing the Actions with prejudice, substantially in the form attached hereto as **Exhibit D**.

60.     "Settlement Website" means the Internet Website with the following URL address created, established and maintained by the Settlement Administrator: www.OnlinePriceSettlement.com.

61.     "Single Purchaser Relief" means the remuneration defined in Paragraph 26.a. herein.

62.     "Summary Notice" means the summary notice of the proposed class action settlement, substantially in the form attached hereto as **Exhibit E**.

63.     "Voucher" means a voucher or code that may be redeemed for Merchandise through GNC's Website only. Vouchers are subject to the following terms and conditions: (a) a Settlement Class Member need not spend any cash to redeem a Voucher for Merchandise; (b) Vouchers are fully transferrable with no expiration date; (c) up to two (2) Vouchers may be combined or stacked to purchase Merchandise in a single transaction; (d) Vouchers may not be combined with other offers except that Vouchers may be used on any Merchandise offered to the general public on promotion or at a discount; (e) Vouchers have no cash or other independent monetary value; (f) Vouchers are good for one-time use with no credit given or cash refund provided for purchases below the original Voucher value amount; and (g) no minimum or maximum purchase amount is required to use Vouchers.

64.     "Voucher Election Total" means the total dollar amount of all Eligible Claimants' elections to receive a Voucher pursuant to the Single Purchaser Relief and Multiple Purchaser Relief.

65.     The plural of any defined term includes the singular and the singular of any defined term includes the plural, as the case may be.

### III.     SUBMISSION OF THE SETTLEMENT TO THE COURT FOR REVIEW AND APPROVAL

66.     As soon as is practicable following the signing of this Agreement, Class Counsel shall apply to the Court for entry of the Preliminary Approval Order (substantially in the form attached as **Exhibit C**), for the purpose of, among other things:

a.     Approving the Class Notice, substantially in the form set forth at **Exhibits B and E**;

b.     Finding that the requirements for provisional certification of the Settlement Class have been satisfied, appointing Representative Plaintiffs as the representatives of the Settlement Class and Class Counsel as counsel for the Settlement Class, and preliminarily approving the Settlement as being within the range of reasonableness such that the Class Notice should be provided pursuant to this Agreement;

c.     Scheduling the Fairness Hearing on a date ordered by the Court, provided in the Preliminary Approval Order, and in compliance with applicable law, to determine whether

the Settlement should be approved as fair, reasonable, and adequate, and to determine whether the Settlement Order and Final Judgment should be entered dismissing the Actions with prejudice;

       d.     Determining that the notice of the Settlement and of the Fairness Hearing, as set forth in this Agreement, complies with all legal requirements, including but not limited to the Due Process Clause of the United States Constitution and Federal Rule of Civil Procedure 23;

       e.     Preliminarily approving the form of the Settlement Order and Final Judgment;

       f.     Preliminarily enjoining Representative Plaintiffs and Settlement Class Members who do not properly and timely request exclusion from the Settlement Class from prosecuting any Released Claims against any Released Parties;

       g.     Appointing the Settlement Administrator;

       h.     Directing that Class Notice shall be given to the Settlement Class as provided in this Agreement;

       i.     Providing that Settlement Class Members will have until the Claim Deadline to submit Claim Forms;

       j.     Providing that any objections by any Settlement Class Member to the certification of the Settlement Class and the proposed Settlement contained in this Agreement, and/or the entry of the Settlement Order and Final Judgment, shall be heard and any papers submitted in support of said objections shall be considered by the Court at the Fairness Hearing only if, on or before the date(s) specified in the Class Notice and Preliminary Approval Order, such objector submits to the Court a written objection, and otherwise complies with the requirements in Paragraphs 101 to 106 of this Agreement and Federal Rule of Civil Procedure 23(e)(5)(A);

       k.     Establishing dates by which the Parties shall file and serve all papers in support of the application for final approval of the Settlement and in response to any valid and timely objections;

       l.     Providing that all Settlement Class Members will be bound by the Settlement Order and Final Judgment dismissing the Actions with prejudice unless such Settlement Class Members timely file valid written requests to opt out in accordance with this Agreement and the Class Notice;

       m.     Providing that Settlement Class Members wishing to exclude themselves from the Settlement will have until the date specified in the Class Notice and the Preliminary Approval Order to submit to the Settlement Administrator a valid written request to opt out;

n.      Providing a procedure for Settlement Class Members to opt out of the Settlement;

o.      Directing the Parties, pursuant to the terms and conditions of this Agreement, to take all necessary and appropriate steps to establish the means necessary to implement the Settlement; and

p.      Pending the Fairness Hearing, staying all proceedings in the *Gennock* action, other than proceedings necessary to carry out or enforce the terms and conditions of this Agreement and the Preliminary Approval Order.

67.      Following the entry of the Preliminary Approval Order, Class Notice shall be given and published in the manner directed and approved by the Court.

68.      At the Fairness Hearing, the Parties shall seek to obtain from the Court a final Settlement Order and Final Judgment in the form substantially similar to **Exhibit D**. The Settlement Order and Final Judgment shall, among other things:

a.      Find that the Court has personal jurisdiction over all Settlement Class Members, the Court has subject matter jurisdiction over the claims asserted in the Actions, and that venue is proper;

b.      Finally approve this Agreement and the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      Certify the Settlement Class for purposes of settlement;

d.      Find that the notice to the Settlement Class complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

e.      Incorporate the Release set forth in this Agreement and make the Release effective as of the date of the Settlement Order and Final Judgment;

f.      Issue the injunctive relief described in Paragraph 76 of this Agreement;

g.      Permanently enjoin Representative Plaintiffs and Settlement Class Members who did not properly and timely request exclusion from the Settlement Class from prosecuting any Released Claims against any Released Parties;

h.      Authorize the Parties to implement the terms of the Settlement;

i.      Entering judgment in the *Gennock* action; and

j.      Retain jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Agreement, the Settlement Order, Final Judgment, any

final order approving the Fee and Expense Award and Service Payments, and for any other necessary purpose.

69.     The Parties agree that the Notice Plan contemplated by this Agreement is valid and effective, that if effectuated, it would provide reasonable and adequate notice to the Settlement Class, and that it represents the best practicable notice under the circumstances.

70.     Upon execution of this Agreement the Parties shall stipulate to stay the *Kaskorkis* and *Harrison* actions pending the Effective Date and subject to the approval of the courts in the *Kaskorkis* and *Harrison* actions. Within five (5) days of the date of the Effective Date, the Parties will file stipulations dismissing with prejudice the *Kaskorkis* and *Harrison* actions.

71.     The certification of the Settlement Class shall have no bearing in deciding whether the claims asserted in the Actions are or were appropriate for class treatment in the absence of settlement.  If this Agreement terminates or is nullified, the provisional class certification in any order preliminarily approving this Settlement that is entered shall be vacated by its terms, and the Actions shall revert to the status that existed before execution of this Agreement.  Thereafter, Representative Plaintiffs shall be free to pursue any claims available to them, and GNC shall be free to assert any defenses available to it, including but not limited to, denying the suitability of this case for class treatment.  Nothing in this Agreement shall be argued or deemed to estop any Party from the assertion of such claims and defenses.

## IV.     THE SETTLEMENT CONSIDERATION

72.     **Settlement Fund**: GNC will make available Six Million Dollars ($6,000,000.00) in monetary consideration to create the Settlement Fund for the benefit of Settlement Class Members pursuant to the terms of this Settlement.  GNC's obligation to create the Settlement Fund shall be fulfilled by (i) GNC's cash payment of the Settlement Administration Expenses, Service Payments, Fee and Expense Award, and Cash Election Total, and (ii) issuing Vouchers to Eligible Claimants who submit valid and timely claims (*i.e.* the aggregate dollar value of all Vouchers issued to Eligible Claimants pursuant to this Agreement, shall be applied as a credit to GNC's obligation to pay the Settlement Fund). In addition, the aggregate dollar value of each Redeemed Coupon shall be applied as a credit to GNC's obligation to pay the Settlement Fund, but only as set forth in Paragraph 74.d below (*i.e.* only if the unadjusted Aggregate Individual Relief Value is less than the Net Settlement Fund).  GNC shall make available the Settlement Fund in the following manner:

73.     Settlement Fund - Payments Prior to the Effective Date:

a.     Initial Deposit for Settlement Administration Expenses:  Within fourteen (14) calendar days after the entry of the Preliminary Approval Order, GNC shall pay the Initial Deposit to the Settlement Administrator.  This deadline may be extended by mutual consent of the Parties.

b.     Periodic Payment(s) for Settlement Administration Expenses:  Following the entry of the Preliminary Approval Order, and after the payment of the Initial Deposit, GNC

shall make Periodic Payments within thirty (30) calendar days after approval by Class Counsel and GNC's Counsel of an invoice by the Settlement Administrator.  This deadline may be extended by mutual consent of the Parties.

74.     Settlement Fund - Post Effective Date Calculations:

a.     Within five (5) business days after the Effective Date, the Settlement Administrator shall determine the amount of any and all current and future Settlement Administration Expenses related to this Settlement which have not yet been invoiced and provide a final invoice to Class Counsel and GNC's Counsel for approval, which GNC shall pay with thirty (30) calendar days of approval.

b.     Within five (5) business days after the Effective Date, the Settlement Administrator shall determine the Aggregate Individual Relief Value.

c.     In the event the dollar amount of the Aggregate Individual Relief Value is greater than the Net Settlement Fund, then the cash payment amount and Voucher value due to each Eligible Claimant, as set forth in Paragraphs 26.a. and 26.b. above, shall be proportionately reduced on a *pro rata* basis, such that the Aggregate Individual Relief Value does not exceed the Net Settlement Fund. For avoidance of doubt, and only as an illustrative example, in the event the Net Settlement Fund equals $3,500,000 and the unadjusted Aggregate Individual Relief Value equals $4,000,000, then each entitlement to a cash payment of $5.00 would be reduced to $4.38 and each entitlement to a Voucher worth $15.00 would be reduced to $13.13.  The Settlement Administrator shall determine each Eligible Claimant's *pro rata* share based upon each Eligible Claimant's Claim Form and the aggregate value of the cash and Voucher benefits claimed by the Eligible Claimants.

d.     In the event the dollar amount of the Aggregate Individual Relief Value is less than the Net Settlement Fund, then the Redeemed Coupon Credit shall be applied as a credit to GNC's obligation to pay the Settlement Fund.

e.     In the event that the sum of (i) the Aggregate Individual Relief Value and (ii) the Redeemed Coupon Credit is less than the Net Settlement Fund, then the cash payment amount and Voucher value due to each Eligible Claimant, as set forth in Paragraphs 26.a. and 26.b. above, shall be proportionately increased on a *pro rata* basis, such that the adjusted Aggregate Individual Relief Value plus the Redeemed Coupon Credit equals the Net Settlement Fund.  For avoidance of doubt, and only as an illustrative example, if the Net Settlement Fund equals $3,500,000 and the unadjusted Aggregate Individual Relief Value plus the Redeemed Coupon Credit equals $3,000,000, then each entitlement to a cash payment of $5.00 would be increased to $5.83 and each entitlement to a Voucher worth $15.00 would be increased to $17.50.  The Settlement Administrator shall determine each Eligible Claimant's *pro rata* share based upon each Eligible Claimant's Claim Form and the aggregate value of the cash and Voucher benefits claimed by the Eligible Claimants.

75.     Settlement Fund - Payments After Effective Date: No later than fifteen (15) business days after the Effective Date, in addition to the payments set forth in Paragraphs 73 and

74.a., GNC shall pay each of the following cash amounts into the Escrow Account:

      a.      An amount equal to the Cash Election Total;

      b.      An amount equal to the total Service Payments; and

      c.      An amount equal to the Fee and Expense Award.

76.    **Injunctive Relief**:  GNC agrees to take reasonable steps to ensure its comparative discount advertising on GNC's Website as of the date of this Agreement, and continuing forward, complies with then-existing Federal or California law, including 16 C.F.R. §§ 233.1 and Cal. Bus. & Prof. Code § 17501 (if the advertisement will appear in California).

    a.    Customer Notice – Website Posting.  GNC agrees that no later than thirty (30) days after the Effective Date, it shall publish on GNC's Website disclosures concerning its reference pricing or similar practices for so long as it uses such practices, subject to the limitations set forth in Paragraph 76.b.

    b.    No Obligation to Report/Notify.  Nothing in this Agreement requires GNC to notify Representative Plaintiffs, Settlement Class Members and/or Class Counsel of any future changes to training, website posting, polic(ies), practice(s), and/or procedure(s) and/or report such changes to any third party.

    c.    Duration.  Any ongoing requirements of Paragraph 76 shall remain in effect for so long as compliance is commercially reasonable and practical, as GNC shall determine in its sole discretion, and in any event for not less than two (2) years from the date of Final Approval.

    d.    In addition to the Settlement Fund, GNC shall pay for any costs and expenses associated with the implementation of the provisions of this Paragraph 76.

## V.    DISTRIBUTION TO SETTLEMENT CLASS MEMBERS

77.    All Settlement Class Members will be sent a Coupon in the Class Notice. Settlement Class Members need not submit a Claim Form to use their Coupon.

78.    Settlement Class Members shall also be eligible for the Individual Relief from the Net Settlement Fund as provided in this Agreement, provided they complete and timely submit the Claim Form (which shall be included with the Long-Form Class Notice available on the Settlement Website) to the Settlement Administrator prior to the Claim Deadline and the Settlement Administrator and the Parties approve the claim for relief.

79.    Distribution of Vouchers and PayPal / eCheck payments shall be effectuated through e-mail at the address provided by the Eligible Claimant in the Claim Form.

80.    Distribution to Eligible Claimants who elected to receive cash pursuant to the Individual Relief shall be made by payment to the Eligible Claimants' choice of their PayPal

Account or bank account via eCheck.  The payment of the cash due to each so electing Eligible Claimant, whether by payment to the Class Members' PayPal Account or bank account via eCheck, if applicable, shall have the identical legal effect under this Agreement.  A physical check will be mailed to the extent payment to the Settlement Class Members' PayPal Account or bank account via eCheck bounces back. A Settlement Class Member shall have ninety (90) days after the date of issuance, to deposit, or otherwise negotiate, a check or an eCheck.

81.     PayPal and eCheck payments will be made by the Settlement Administrator within forty-five (45) days of the approval by Class Counsel and GNC's Counsel of the Settlement Administrator's claim determinations set forth in Paragraphs 114 below.

82.     The Settlement Administrator shall distribute the Vouchers to the applicable Eligible Claimants within forty-five (45) days of approval by Class Counsel and GNC's Counsel of the Settlement Administrator's claim determinations set forth in Paragraphs 114 below.

83.     At the time Individual Relief is distributed, the Settlement Administrator will notify Eligible Claimants that the Individual Relief they receive represents their right to relief under this Agreement and that the determination of the Individual Relief type and amount is final and not subject to challenge by them.

84.     At the time Individual Relief is distributed, the Settlement Administrator will notify Claimants deemed not eligible that their claim has been disallowed, together with a brief statement of the reason(s) why the Settlement Administrator disallowed their claim and that the determination of disallowance is final and not subject to challenge by them.

85.     The Settlement Administrator shall distribute the Residual Funds, subject to the Court's approval, to the following 26 U.S.C. § 501(c)(3) non-profit organization:  National Consumer Law Center.

86.     The Residual Funds will not be returned to GNC.

## VI.    RELEASES

87.     Sole and Exclusive Remedy.  This settlement shall be the sole and exclusive remedy for any and all Released Claims against the Released Parties.  All Releasing Parties shall be barred from initiating, asserting, or prosecuting the Released Claims.

88.     Class Release to GNC and the Released Parties.  Upon the Effective Date, the Representative Plaintiffs, for themselves and as the representatives of the Settlement Class, and on behalf of each Settlement Class Member and all Releasing Parties, shall have fully, finally, and forever irrevocably released, relinquished, and forever discharged with prejudice all Released Claims against the Released Parties.

89.     Individual Releases by Representative Plaintiffs.  Upon the Effective Date, the Representative Plaintiffs, for themselves and on behalf of their respective agents, successors, heirs, assigns, and any other person who can claim by or through them in any manner, shall have

fully, finally and forever irrevocably released, relinquished and forever discharged with prejudice all Released Claims against the Released Parties.

90.     Effect of Releases.  With respect to any and all Released Claims, effective upon Final Approval, the Representative Plaintiffs, for themselves and as the representatives of the Settlement Class, and on behalf of each Settlement Class Member who has not timely opted out and all Releasing Parties, shall expressly waive, and each Settlement Class Member and Releasing Party shall be deemed to have waived, and by operation of the judgment of the Court in the *Gennock* action shall have expressly waived, any and all claims, rights, or benefits they may have under California Civil Code § 1542 and any similar federal or state law, right, rule, or legal principle that may be applicable.  The Parties agree and acknowledge that this waiver is an essential term of this Agreement.  California Civil Code § 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## VII.   NOTICE OF THE SETTLEMENT

92.     Defendants shall comply with 28 U.S.C. §1715 ("CAFA").  No later than ten (10) days after this Agreement is filed with the Court, Defendants shall mail or cause the items specified in 28 U.S.C. §1715(b) to be mailed to each State and Federal official, as specified in 28 U.S.C. §1715(a).  All notification duties imposed by 28 U.S.C. §1715 shall be separate and in addition to any other obligation imposed herein.  In the event Defendants elect to fulfill their obligation to comply with CAFA with the assistance of the Settlement Administrator, any costs or expenses associated with such assistance shall be a Settlement Administration Expenses and thus paid by / deducted from the Settlement Fund.

93.     Notice of the Settlement to the Settlement Class Members shall comply with Federal Rules of Civil Procedure and any other applicable statute, law, or rule, including but not limited to, the Due Process Clause of the United States Constitution.

94.     The Parties shall jointly recommend and retain Angeion Group to be the Settlement Administrator.  Following the Court's Preliminary Approval of this Agreement and the Court's appointment of the proposed Settlement Administrator, the Settlement Administrator shall disseminate the Class Notice as provided for herein and as specified in the Preliminary Approval Order and in this Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

95.     Dissemination of the Class Notice:

        a.     *Class Member Information*: No later than ten (10) days after entry of the Preliminary Approval Order, Defendants shall provide the Settlement Administrator with the

Class Member Information that Defendants possess. Defendants warrant and represent that they will provide the most current Class Member Information for all Settlement Class Members.

           i.      The Class Member Information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Agreement and shall not be used for any other purpose at any time. Except to administer the Settlement as provided in this Agreement, or provide all data and information in its possession to the Parties upon request, the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Class Member Information.

           b.      *Settlement Website*: Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish the Settlement Website - an Internet website, www.OnlinePriceSettlement.com - that will inform Settlement Class Members of the terms of this Agreement, their rights, dates and deadlines, and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long-Form Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) this Agreement (including all of its Exhibits), (v) the Consolidated Class Action Complaint filed on June 24, 2019; and (vi) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide Settlement Class Members with the ability to complete and submit the Claim Form electronically. The Settlement Website shall be active and accessible beginning on the date on which the transmittal of Class Notice commences through forty-five (45) days after the date Individual Relief is distributed to Eligible Claimants.

           c.      *Toll Free Telephone Number*: Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a toll-free telephone number, through which Settlement Class Members may obtain information about the Actions and the Settlement and request a mailed copy of the Long-Form Notice and/or the Claim Form, pursuant to the terms and conditions of this Agreement, through an automated interactive voice response system.

           d.      *Settlement E-mail*: Prior to the dissemination of the Class Notice, the Settlement Administrator shall establish a Settlement e-mail address to which Settlement Class Members may submit requests for information.

           e.      *Summary Notice*: Within fourteen (14) days after the entry of the Preliminary Approval Order and to be substantially completed not later than thirty (30) days after entry of the Preliminary Approval Order, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Parties will coordinate with the Settlement Administrator to provide notice to the Settlement Class as follows:

           f.      E-mailing the Summary Notice and Coupon, to all Settlement Class Members identified by Defendants pursuant to Paragraphs 95.a. and 133 herein and as specified in the Preliminary Approval Order;

              i.      If an e-mail sent to a Settlement Class Member bounces back (as opposed to being returned as undeliverable), the Settlement Administrator will make up to two additional e-mail attempts on days and times chosen by Settlement Administrator as reasonably likely to achieve delivery. If the e-mail notice is bounced back on the third attempt, the e-mail

notice will be treated as undeliverable.  The Summary Notice will direct recipients to the Settlement Website and inform Settlement Class Members, *inter alia*, of the Claim Deadline, the Opt-Out and Objection Deadline, the date of the Fairness Hearing, and that the Long-Form Notice and Claim Form may be found at the Settlement Website.

          ii.      Summary Notice *via* US Mail. For Settlement Class Members whose e-mails are undeliverable, the Settlement Administrator will provide the Summary Notice to the affected Settlement Class Members by postcard *via* U.S. mail. Before mailing under this Paragraph, the Settlement Administrator shall run the postal addresses of Settlement Class Members whose e-mails are undeliverable as they appear in GNC's records through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS.  The Settlement Administrator shall re-mail one time any postcard notice returned by the USPS with updated address information. In the event that subsequent to the re-mailing of a Summary Notice, and at least seven (7) business days prior to the Opt-Out and Objection Deadline, a Summary Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Class Notice within two (2) days of receiving such information. The Parties shall not be obliged to direct the Settlement Administrator to take any further steps with respect to re-mailing returned postcard notices beyond what is described above.

          g.      Publishing, on or before the Notice Date, the Long-Form Notice on the Settlement Website (www.OnlinePriceSettlement.com), as specified in the Preliminary Approval Order; and

          h.      Providing the Internet address, in the Long-Form Notice and the Summary Notice, to the Settlement Website (www. OnlinePriceSettlement .com).

          i.      <u>Email Reminder.</u>  The Parties reserve the right (but not the obligation) upon their joint approval to direct the Settlement Administrator to transmit one or more e-mail reminders of the opportunity to file a Claim Form prior to the Claim Deadline to any Settlement Class Member for whom the Settlement Administrator has an e-mail address, and who has not submitted a valid Claim Form.  Absent such joint approval neither the Settlement Administrator nor the Parties shall otherwise supplement the Notice Plan herein.

        96.      <u>The Long-Form Notice</u>:  The Long-Form Notice shall be in a form substantially similar to the document attached to this Agreement as **Exhibit B** and shall comport to the following:

          a.      <u>General Terms</u>:  The Long-Form Notice shall contain a plain and concise description of the nature of the Actions and the proposed Settlement, including information on the definition of the Settlement Class, the identity of Settlement Class Members, how the

proposed Settlement would provide relief to Settlement Class Members, what claims are released under the proposed Settlement, and other relevant information.

        b.     <u>Opt-Out Rights</u>:  The Long-Form Notice shall inform Settlement Class Members that they have the right to opt out of the Settlement.  The Long-Form Notice shall provide the deadlines and procedures for exercising this right.

        c.     <u>Objection to Settlement</u>:  The Long-Form Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

        d.     <u>Fees and Expenses</u>:  The Long-Form Notice shall inform Settlement Class Members that the Settlement Administrator Expenses will be deducted from the Settlement Fund, the maximum amounts to be sought by Class Counsel as attorneys' fees and expenses, and the individual Service Payments sought by Plaintiffs, and shall explain that the fees and expenses awarded to Class Counsel, and Service Payments to Plaintiffs, in addition to amounts being made available for relief to Settlement Class Members, will be deducted from the Settlement Fund and be paid out of or credited against the Settlement Fund as provided herein.

        e.     <u>Claim Form</u>:  The Long-Form Notice shall include the Claim Form, both of which shall inform the Settlement Class Member: (i) that he or she can elect to receive the Individual Relief by payment to the Settlement Class Member's PayPal Account or bank account via eCheck, if applicable; (ii) that in order to receive cash by payment to the Settlement Class Member's PayPal Account or bank account via eCheck, if applicable, the Settlement Class Member must fully complete and timely submit the Claim Form prior to the Claim Deadline; and (iii) that if the Settlement Class Member elects to receive the Individual Relief by a payment to the Settlement Class Member's PayPal Account or bank account via eCheck, if applicable, it is the responsibility of the Settlement Class Member to ensure that the payment information in the Settlement Class Member's Claim Form remains current until such time as the payment contemplated herein has been issued.

## VIII.   OPT-OUT RIGHTS

       97.     In the event a Settlement Class Member wishes to be excluded from the Settlement Class, the Settlement, and not to be bound by this Agreement, then that person must, prior to the Opt-Out and Objection Deadline sign and mail a notice of intention to opt out of the Settlement to the Settlement Administrator (in no particular format, but which contains the account holder's name, address, and telephone number and the words "opt out," "exclusion," or words to that effect clearly indicating an intent not to participate in the settlement).  If necessary, the Parties shall confer as to whether a communication is a request to opt out, and shall inform the Court of their position at the Fairness Hearing. In no event shall any notice in which someone purports to opt out any other person (including any group, aggregate, or putative class involving more than one account) be considered a valid opt-out. Individuals are not permitted to exclude other individuals, and each individual must evidence his or her intent by complying with the procedures above.  Any opt-out submitted on behalf of a group, aggregate, or putative class shall be deemed valid as to the individual submitting the opt-out only, and shall be invalid as to the

group, aggregate, or putative class. Settlement Class Members will not include any persons who send timely and valid opt-out requests, and those Persons who have submitted a valid and timely opt-out will not release any claims and will not be entitled to any benefit under this Settlement.

98.     The Long-Form Notice shall provide that requests to opt out of the Settlement that are submitted by U.S. mail must be mailed to the Settlement Administrator postmarked by the Opt-Out and Objection Deadline, or be forever barred.

99.     The Long-Form Notice shall provide that requests to opt out of the Settlement that are submitted on the Settlement Website must be submitted by the Opt-Out and Objection Deadline, or be forever barred.

100.    The Settlement Administrator must send GNC's Counsel and Class Counsel copies of any opt-out notices it receives (including the date of receipt and a copy of the postmark) within seven (7) days of receipt.  Defendants or Class Counsel may object to an opt-out or purported opt-out, including an attempt to opt out as a group, aggregate or class, within thirty (30) days of the postmarking of the notice of intention to opt out, or by the date of the Fairness Hearing, whichever occurs later.  Such objection shall be effective to void any opt-out or purported opt-out, unless and until (i) counsel for the other Parties disputes the objection, in good faith and in writing to the objecting counsel, within ten (10) days of the objection, and (ii) promptly seeks a ruling by the Court and proves that the objection should be rejected or overruled.  The Court shall retain jurisdiction to resolve such disputes.  Any decision by Defendants or GNC's Counsel not to object to an opt-out or purported opt-out shall not be a waiver, determination, or preclusive finding against Defendants with respect to any other opt-out notice.

## IX.     OBJECTIONS TO THE SETTLEMENT

101.    Subject to the requirements of Paragraphs 101 to 104, any Settlement Class Member may (i) object to the proposed Settlement and/or to the Fee Application and/or to the Service Payment Application, and (ii) appear at the Fairness Hearing to object to the proposed Settlement and/or to the Fee Application and/or the Service Payment Application.  To do so, the Settlement Class Member must (i) file a written objection (together with any briefs, papers, statements, or other materials that the Settlement Class Member wishes the Court to consider) with the Clerk of the Court, and (ii) comply with all of the requirements set forth in Paragraphs 101 to 104 below, by the Opt-Out and Objection Deadline.  Further, any Settlement Class Member who intends to object and appear at the Fairness Hearing, must file a Notice of Intention to Appear with the Clerk of the Court and serve the Notice on all Parties.  Only a Settlement Class Member may file an objection.

102.    The Settlement Class Member(s) must make his, her, or their objection in writing, which must be personally signed by the objecting Settlement Class Member, and file it (together with any briefs, papers, statements, or other materials that the Settlement Class Member wishes the Court to consider) with the Clerk of the Court in the *Gennock* action by the Opt-Out and Objection Deadline, and serve the objection on Class Counsel and GNC's Counsel at the

addresses specified in the Class Notice, postmarked no later than the Opt-Out and Objection Deadline.

103.    An objection must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) a statement as to whether the objection applies only to the objector, a specific subset of the class, or the entire class; (4) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (5) the name and contact information of any and all Objecting Attorneys; (6) a statement indicating whether the objector intends to appear at the Settlement Hearing (either personally or through counsel who files an appearance with the Court in the *Gennock* action in accordance with the Local Rules); (7) identify all documents which the Settlement Class Member asks the Court to consider; and (8) identify, with specificity, each instance in which the Settlement Class Member or his/her counsel has objected to a class action settlement in the past five (5) years, including the caption of each case in which the objector has made such objection, and a copy of any order or opinions related to or ruling upon the objectors' prior such objections that were issued by the trial and/or appellate courts in each listed case.

104.    If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption.

105.    Class Counsel and GNC's Counsel may file responses to any objections within five (5) days before the Fairness Hearing.

106.    Any Settlement Class Member who does not file and serve a timely (on or before the Opt-Out and Objection Deadline) and complete written and personally-signed objection that fully complies with the requirements of Paragraphs 101 to 104 above shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, the Fee Application, the Fee and Expense Award, Service Payment Application, or the Service Payments.

## X.    ADMINISTRATION OF THE SETTLEMENT

107.    In fulfilling its responsibilities in providing Class Notice, the Settlement Administrator shall be responsible for, without limitation, implementing the Notice Plan set forth in this Agreement.  In particular, the Settlement Administrator shall be responsible for: (a) arranging for the publication of the Summary Notice and dissemination of the Class Notice pursuant to the requirements of this Agreement; (b)  implementing notice to the Settlement Class by various means as set forth herein; (c) responding to requests from Class Counsel and/or GNC's Counsel; and (d) otherwise implementing and/or assisting with the dissemination of the Class Notice of the Settlement in accordance with the Notice Plan and pursuant to the requirements of this Agreement.

108.    The Settlement Administrator also shall be responsible for, without limitation, implementing the terms of the claim process and related administrative activities that include communications with Settlement Class Members concerning the Settlement, the claim process, and their options thereunder.  In particular, the Settlement Administrator shall be responsible for: (a) printing, e-mailing, mailing or otherwise arranging for the mailing of the Class Notice; (b) making any mailings (electronically or by U.S. Mail) required under the terms of this Agreement; (c) establishing the Settlement Website; (d) establishing a toll-free voice response unit with message and interactive voice response (IVR) capabilities to which Settlement Class Members may refer for information about the Actions and the Settlement; (e) receiving and maintaining any Settlement Class Member correspondence regarding requests for exclusion to the Settlement; (f) forwarding inquiries from Settlement Class Members to Class Counsel for a response, if warranted; (g) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (h) reviewing Claim Forms according to the review protocols agreed to by the Parties and set forth in this Agreement; and (i) otherwise implementing and/or assisting with the Claim Form review and reporting process and the remittance of the Individual Relief to Settlement Class Members.

109.    The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall:

a.    Treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications or other information to any person or entity except to the Parties upon request, as provided for in this Agreement, or by court order;

b.    Receive opt out requests from Settlement Class Members and provide to Class Counsel and GNC's Counsel copies thereof in the manner described in Paragraph 100, above.  If the Settlement Administrator receives any requests for exclusion or opt out request after the deadline for the submission of such requests, the Settlement Administrator shall promptly provide Class Counsel and GNC's Counsel with copies thereof; and

c.    Receive and maintain all correspondence from any Settlement Class Member regarding the Settlement.

110.    The Settlement Administrator shall be reimbursed from the Settlement Fund up to the amount approved by the Parties' counsel toward reasonable costs, fees, and expenses of providing notice to the Settlement Class and administering the Settlement in accordance with this Agreement.

111.    In the Summary Notice that will be e-mailed or mailed pursuant to the Paragraph 95.f. herein, each Settlement Class Member shall be provided a unique individualized number, referred to as a Claim Number.  In the event a Settlement Class Member does not have his or her Claim Number, the Settlement Administrator may nevertheless allow the claim if it is otherwise timely, complete, and meets the requirements set forth in this Agreement and in the Claim Form instructions.

112.    The Settlement Administrator shall employ reasonable procedures to screen claims for abuse or fraud.

113.    Claim Forms that do not meet the requirements set forth in this Agreement and in the Claim Form instructions shall be rejected.  Where a good faith basis exists, the Settlement Administrator may reject a Settlement Class Member's Claim Form for, among other reasons, the following:

a.    The name and e-mail provided on the Claim Form do not both appear in GNC's list of all Settlement Class Members;

b.    Failure to fully complete and/or sign the Claim Form;

c.    Illegible Claim Form;

d.    The person submitting the Claim Form is not a Settlement Class Member;

e.    The Settlement Administrator has a good faith basis to believe the Claim Form is fraudulent;

f.    The Claim Form is duplicative of another Claim Form;

g.    The person submitting the Claim Form requests that payment be made to a person or entity other than the Settlement Class Member for whom the Claim Form is submitted;

h.    Failure to submit a Claim Form by the Claim Deadline;

i.    Failure to provide proof of purchase for each transaction they contend qualifies them to be a Multiple Purchaser; and/or

j.    The Claim Form otherwise does not meet the requirements of this Agreement.

114.    The Settlement Administrator shall determine whether a Claim Form meets the requirements set forth in this Agreement.  Each Claim Form shall be submitted to and reviewed by the Settlement Administrator, who shall determine (in accordance with this Agreement) the extent, if any, to which the election shall be allowed, subject to review and approval by Class Counsel and GNC's Counsel described below.  GNC will have the right (but not the obligation) to verify the truthfulness of any Claimant representations.  The Settlement Administrator may reject or deny any claims that GNC reasonably deems false based on its records.

115.    The Settlement Administrator shall reject Claim Forms that do not meet the terms and conditions of this Agreement.

116.    No person shall have any claim against Defendants, GNC's Counsel, Plaintiffs, Class Counsel, the Settlement Class, and/or the Settlement Administrator based on any eligibility

determinations, distributions, or awards made in accordance with this Agreement. This provision does not affect or limit in any way the right of review by the Court or referee of any disputed Claim Forms as provided in this Agreement.

117.    The Claim Form shall be deemed to have been submitted when it is actually received by the Settlement Administrator.

118.    Class Counsel and GNC's Counsel shall have the right to inspect the Claim Forms, supporting documentation received by the Settlement Administrator, any document, data or other tangible thing in the Settlement Administrator's custody, possession or control, at any time upon reasonable notice.

119.    No later than seven (7) days after the Claim Deadline, the Settlement Administrator shall provide GNC's Counsel and Class Counsel with (i) the names and addresses of Eligible Claimants whose claims have been approved, and the Individual Relief distributable to each Eligible Claimant, and (ii) the names and addresses of claimants deemed not eligible and a brief statement of the reason(s) why the claim has been disallowed, including any claim of falsity based on GNC's records. The Settlement Administrator may provide this information in such form or media as GNC and Class Counsel reasonably agree, subject to approval by the Settlement Administrator. The Parties will have the right to review the eligible and ineligible claims. Any Party that does not object in writing to the Settlement Administrator's claims decisions and amounts within ten (10) days after receipt, shall have no further right to object to the Settlement Administrator's list of claims and amounts payable. Should any Party timely object to the claims decision or computations, the Parties promptly shall seek to resolve any such dispute. If they cannot reach agreement within ten (10) days of receipt of a timely objection, the Parties shall submit their disagreement to the Court in the *Gennock* action or, upon mutual agreement, to Carole Katz or another mutually agreeable arbitrator for disposition.

120.    Any Settlement Class Member who, in accordance with the terms and conditions of this Agreement, does not seek exclusion from the Settlement Class will be bound together with all Settlement Class Members by all of the terms of this Agreement, including the terms of the Settlement Order and Final Judgment to be entered in the Actions and the releases provided for herein, and will be barred from bringing any action in any forum (state or federal) against any of the Released Parties concerning the Released Claims.

121.    Not later than fourteen (14) days before the date of the Fairness Hearing, the Settlement Administrator shall file with the Court a document: (a) containing a list of those persons who have opted out or excluded themselves from the Settlement; and (b) the details regarding the number of valid and invalid Claim Forms received and processed by the Settlement Administrator.

122.    The Settlement Administrator may retain one or more persons to assist in the completion of its responsibilities.

123.    If the Settlement is not approved or for any reason the Effective Date does not occur, no payments or distributions of any kind shall be made pursuant to this Agreement, except

for the costs and expenses of the Settlement Administrator, which shall be paid by GNC pursuant to the terms of this Agreement, and for which Representative Plaintiffs and Class Counsel are not and will not be responsible under any circumstance.

124.    In the event the Settlement Administrator fails to perform its duties, and/or makes a material or fraudulent misrepresentation to, or conceals requested material information from, Class Counsel, Defendants, and/or GNC's Counsel, then the party to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Settlement Administrator immediately be replaced.  No party shall unreasonably withhold consent to remove the Settlement Administrator.  The Parties will attempt to resolve any disputes regarding the retention or dismissal of the Settlement Administrator in good faith, and, if they are unable to do so, will refer the matter to the Court for resolution.

## XI.    FEE AND EXPENSE AWARD AND SERVICE PAYMENTS

125.    In recognition of the time and effort the Representative Plaintiffs expended in pursuing the Actions and in fulfilling their obligations and responsibilities as class representatives, and of the benefits conferred on all Settlement Class Members by the Settlement, Class Counsel, may ask the Court for the payment of a Service Payment from the Settlement Fund to each of the Representative Plaintiffs *via* the Service Payment Application.  The Service Payment as awarded by the Court shall be deducted from the Settlement Fund and paid by the Settlement Administrator from the Escrow Account within seven (7) days after (i) receiving into the Escrow Account GNC's cash payments pursuant to Paragraph 75 above or (ii) the Effective Date, whichever is later. GNC will not object or otherwise comment or take a position to any request for Service Payments in the amount of up to Five Thousand Dollars and No Cents ($5,000.00) for each Representative Plaintiff.

126.    Class Counsel will make an application to the Court for the Fee and Expense Award for the services performed by them in the *Kaskorkis*, *Gennock*, and *Harrison* actions. The amount of the attorneys' fees and expenses will be determined by the Court. GNC will not object or take a position to any fee and expenses request up to and including the aggregate amount of One Million Five Hundred Thousand Dollars and No Cents ($1,500,000.00).

127.    Any Fee and Expense Award approved by the Court shall be deducted from the Settlement Fund and paid by the Settlement Administrator from the Escrow Account pursuant to Class Counsel's instructions to the extent such instructions do not conflict with any terms of this Agreement.  Such payment will be in lieu of statutory fees Plaintiffs and/or their attorneys might otherwise have been entitled to recover from Defendants.  This amount shall be inclusive of all fees and costs of Class Counsel to be paid by Defendants and/or the Settlement Fund in the *Kaskorkis*, *Harrison*, and *Gennock* actions.  Plaintiffs and Class Counsel agree that Defendants shall not pay, or be obligated to pay, in excess of any award of the Fee and Expense Award. GNC shall have no responsibility or liability for any failure of Class Counsel, or any of them to deliver any share of fees, costs, or the Service Payment to any of them or to any counsel not included in the definition of Class Counsel, but claiming some right to fees or costs as a result of resolution of the Actions or any payment to the Representative Plaintiffs.  GNC's obligations with respect to any fees, costs, expenses, or payments to any of Class Counsel, or to the

Representative Plaintiffs shall be fully and forever discharged upon the Settlement Administrator's payment of the Fee and Expense Award under this Paragraph as directed by Class Counsel.  Other than GNC's obligation to cause payment of the Fee and Expense Award and the Service Payments in an amount approved by the Court in the *Gennock* action, GNC shall have no further obligations to Class Counsel, or to any other counsel not included in the definition of Class Counsel, but claiming some right to attorneys' fees, costs, and/or expenses, or to the Representative Plaintiffs. Class Counsel shall have no responsibility or liability to deliver any share of the Fee and Expense Award to any counsel that did not represent the Class Representatives in the Actions.

128.    Any Fee and Expense Award approved by the Court shall be paid by the Settlement Administrator from the Settlement Fund within two (2) business days after (i) receiving into the Escrow Account GNC's cash payments pursuant to Paragraph 75 above or (ii) the Effective Date, whichever is later.  Class Counsel shall have the sole and absolute discretion to allocate the Attorneys' Fees and Expenses amongst Class Counsel, and any other attorneys for Representative Plaintiffs.  Defendants shall have no liability or other responsibility for allocation of any such Fee and Expense Award.

129.    The maximum amount of the attorneys' fees and expenses to be applied for by Class Counsel without comment or objection by GNC, was negotiated independently from the other terms of the class Settlement. The Parties negotiated these provisions only after reaching an agreement upon the relief provided to the Settlement Class. The entire negotiation was supervised by the mediator.

130.    The Fee Application and the Service Payment Application shall be filed at least twenty-one (21) days prior to the Opt-Out and Objection Deadline and made available for viewing and download on the Settlement Website. Updated or supplemental petition(s) by those Class Counsel making initial timely petitions only, limited to reporting new and additional professional time and expenses incurred in relation to the Settlement and claims administration process after the filing of the initial petition, shall be permitted to be filed after that date to ensure that the new professional time, costs and expenses on a going-forward basis in the Actions are fairly accounted for by the Court and remain compensable, subject to the Court's approval.

## XII.    REPRESENTATIONS AND WARRANTIES

131.    Class Counsel shall take all necessary actions to accomplish approval of the Settlement, the Class Notice, and dismissal of the Actions. The Parties (including their counsel, successors, and assigns) agree to cooperate fully and in good faith with one another and to use their best efforts to effectuate the Settlement, including without limitation in seeking preliminary and final Court approval of this Agreement and the Settlement embodied herein, carrying out the terms of this Settlement, and promptly agreeing upon and executing all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.  In the event that the Court fails to approve the Settlement, fails to issue the Settlement Order and Final Judgment in the form described in Paragraph 59, or imposes any condition to approval of the Settlement to which the Parties do not consent, or if the Settlement Order and Final Judgment is

reversed or rendered void, the Parties will negotiate in good faith to address the issues raised by said events, including seeking mediation with Carole Katz.

132.    Each Party will cooperate with the other Party in connection with effectuating the Settlement or the administration of claims thereunder.  Any requests for cooperation shall be narrowly tailored and reasonably necessary for the requesting Party to recommend the Settlement to the Court, and to carry out its terms.

133.    Class Member Information. GNC represents and warrants that it will conduct a good faith search of its business records to identify Settlement Class Members and prepare the Class Member Information.

134.    Parties Authorized to Enter into Agreement. Any individual executing this Settlement Agreement on behalf of a Party represents and warrants that he or she is fully authorized to execute this Agreement on such Party's behalf and to carry out the obligations provided for therein.  Each individual executing this Agreement on behalf of a Party covenants, warrants, and represents that he or she is and has been fully authorized to do so by such Party. Each Party represents and warrants that he, she, or it intends to be bound fully by the terms of this Settlement Agreement.  Representative Plaintiffs represent and warrant that they have not assigned any Released Claim as against any Released Party to any other individual or entity and that they are fully entitled to release the same.

135.    Advice of Counsel.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

136.    Agreement Review.  This Agreement has been carefully read by each of the Parties, or the responsible officers thereof, and its contents are known and understood by each of the Parties.  This Agreement is signed freely by each Party executing it after having adequate opportunity to seek the legal advice of their respective attorneys.

## XIII.   MODIFICATION OR TERMINATION OF THE SETTLEMENT

137.    The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Settlement Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Settlement Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

138.    Terms and Intent of Agreement.  This Agreement is entered into only for purposes of settlement.  In the event that the Court enters an order preliminarily or finally approving the Settlement of the Actions in a manner that is inconsistent with the terms and intent of this

Agreement, the Parties shall meet and confer in good faith regarding any modifications made to the proposed order.  If, after meeting and conferring in good faith, GNC determines that the modifications alter the terms and intent of this Agreement sufficiently to render the Agreement null and void under Paragraph 143 below, including but not limited to, because the modifications may increase GNC's liability or reduce the scope of the releases or of the Settlement Class, or if the Court refuses to grant Final Approval of this Agreement or the Effective Date does not come to pass, then GNC shall have the option to terminate this Agreement.  Each Party reserves the right to prosecute or defend this Action in the event that this Agreement does not become final and binding.

139.    Termination Based on Exclusion Requests.  GNC, in its sole and absolute discretion, may elect to terminate this Agreement if exclusion requests as provided for in the Preliminary Approval Order exceed a number to which GNC and Representative Plaintiffs have agreed.  GNC may terminate under this Paragraph by sending written notice that Defendants revoke the settlement pursuant to this paragraph to Class Counsel within three (3) business days following the date the Settlement Administrator informs the Defendants of the number of persons in the Settlement Class who have requested to opt out of the Settlement pursuant to the provisions set forth above.

140.    In the event the terms or conditions of this Agreement, other than terms pertaining to the Fee and Expense Award and/or Service Payments, are modified by any court sufficiently to render the Agreement null and void under Paragraph 143 below, either Party in its sole discretion to be exercised within ten (10) business days after such a material modification may declare this Agreement null and void (with the exception of Paragraphs 137, 138, and 140-42 herein).  In the event that a party exercises his/her/its option to withdraw from, rescind, revoke, and/or terminate this Agreement pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of 137, 138, and 140-42 herein) and shall have no legal effect and may never be mentioned at trial or in dispositive or class motions or motion papers (except as necessary to explain the timing of the procedural history of the Action), and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

141.    Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Settlement Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Settlement Administration Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

142.    Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, then Defendants shall have no further obligations to pay the Settlement Fund or issue Vouchers and shall be responsible for only the Settlement Administration Expenses actually incurred and the

Redeemed Coupons submitted to, and redeemed by GNC, which will be paid by GNC and for which Plaintiffs and their Counsel are not liable.

## XIV.   MISCELLANEOUS PROVISIONS

143.    Settlement Purpose of Agreement.  This Agreement is governed by the terms of Federal Rule of Evidence 408 and is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement or its attachments, nor any action taken hereunder shall constitute, be construed as, or be admissible in evidence as, any admission of the validity of any claim, defense or any fact alleged by any of the Parties in the Actions or in any other pending or subsequently filed action or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, or admission by any Party of any claim, defense or allegation made in the Actions or any other action, nor as an admission by any of GNC, Representative Plaintiffs, or Settlement Class Members of the validity of any fact or defense asserted against them in the Actions or any other action.  With the exception of the terms pertaining to the Fee and Expense Award and/or Service Payments, if the Court in the *Gennock* action should for any reason fail to approve this Agreement in the form agreed to by the Parties, decline to enter the Settlement Order and Final Judgment in the form described in Paragraph 59, or impose any condition to approval of the Settlement to which the Parties do not consent, or if the Settlement Order and Final Judgment is reversed or rendered void, then (a) this Agreement shall be considered null and void, (b) neither this Agreement nor any of the related negotiations shall be of any force or effect, and (c) all Parties to this Agreement shall stand in the same position, without prejudice, as if the Agreement had been neither entered into nor filed with the Court.  Invalidation of any portion of this Agreement shall invalidate this Agreement in its entirety unless the Parties agree in writing that the remaining provisions shall remain in full force and effect.  This includes that the provisional certification of the Settlement Class shall have no bearing in deciding whether the claims asserted in the Actions are or were appropriate for class treatment in the absence of settlement.  If this Agreement terminates or is nullified, the provisional class certification in **Exhibit C** shall be vacated by its terms, and the Actions shall revert to the status that existed before the execution of this Agreement.  Upon nullification of this Agreement, Representative Plaintiffs shall be free to pursue any claims available to them, and GNC shall be free to assert any defenses available to it, including, but not limited to, denying the suitability of this case for class treatment.  Nothing in this Agreement shall be argued or deemed to estop any Party from asserting such claims or defenses.  In the event the Court should for any reason fail to approve this Agreement in the form agreed to by the Parties, decline to enter the Settlement Order and Final Judgment in the form described in Paragraph 59, or impose any condition to approval of the settlement to which the Parties do not consent, or if the Settlement Order and Final Judgment is reversed or rendered void, the Parties will negotiate in good faith to address the issues raised by said events, including seeking mediation.

144.    Cooperation.  The Parties and their counsel will cooperate fully in the process of seeking settlement approval, which shall occur before the Court in the *Gennock* action.  The Parties have, or will cooperate in seeking, a stay of all proceedings in the *Kaskorkis* and *Harrison* actions pending settlement approval, and shall request dismissal of those cases with prejudice upon final approval, as set forth in Paragraph 70.  Class Counsel warrant and agree they will take all steps necessary to obtain and implement the Effective Date of this Agreement,

to defend the Settlement Order and Final Judgment through all stages of any appeals that may be taken (regardless of who prosecutes the appeal), to give Released Parties full and final peace from further prosecution of the Released Claims, and to give the Settlement Class Members the benefits they enjoy under this Agreement.

145.    Governing Law.  This Agreement is intended to and shall be governed by the laws of the Commonwealth of Pennsylvania, without regard to its rules regarding conflict of laws.

146.    Entire Agreement.  The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, whether oral or in writing, express or implied, and may not be contradicted by evidence of any prior or contemporaneous agreement, subject only to the agreement regarding the number of exclusion requests that permits Defendants to terminate this Agreement at their sole discretion pursuant to Paragraph 139 above.  Any modification of the Agreement that may adversely affect Settlement Class Members' substantive rights must be in writing and signed by Representative Plaintiffs and GNC; any other modification of the Agreement must be in writing and signed by Class Counsel and GNC's Counsel.

147.    Construction of Agreement.  The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after extensive negotiation, with consideration by and participation of counsel for all Parties.  The Agreement shall be construed according to the fair intent of the language taken as a whole, and not for or against any Party.

148.    Public Statements.  Each Party agrees not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, or conduct of the other party, including Class Counsel, affiliates, parents, direct and indirect subsidiaries, agents, insurers, and any company or companies under common control with any of them.  Prior to entry of the Settlement Order and Final Judgment by the Court in the *Gennock* action, neither Representative Plaintiffs nor Class Counsel shall directly or indirectly issue or cause to be issued any statements to the media or engage in any other press, publicity or disclosure regarding this Agreement or the settlement of the Actions, except with respect to the filings of any pleading, motion or document Class Counsel deems appropriate, in their sole and absolute discretion, in any of the Actions.

149.    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors, and assigns.

150.    Waiver.  The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

151.    Effectiveness of Agreement; Counterparts.  This Agreement shall become effective upon the last date of its execution by all of the persons for whom signature spaces have been provided below.  The Parties and their counsel may execute this Agreement in counterparts (any one or all of which may be facsimile or PDF/electronic copies), and execution in

counterparts shall have the same force and effect as if all signatories had signed the same document.

152.    Use and Retention of Information.  The list of Settlement Class Members' names, e-mail addresses, and street addresses referred to in Paragraph 11 of this Agreement, any Claim Forms submitted under Paragraph 114 above, and any other documentation containing the names, addresses, e-mail address, or other personal information of GNC customers, may be used by Class Counsel only for purposes of implementing this Agreement.  All such information shall be returned to GNC within thirty (30) days after the Effective Date.

153.    Continuing Jurisdiction.  The Court shall retain exclusive and continuing jurisdiction over this Agreement and over all Parties and Settlement Class Members to interpret, effectuate, enforce, and implement this Agreement.  The Court shall have exclusive jurisdiction to resolve any disputes involving this Agreement, subject to the dispute resolution mechanism set forth in Paragraph 119.

154.    Assignment; Third Party Beneficiaries.  None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any member of the Settlement Class without the express written consent of the other Parties, except as expressly provided herein.

155.    Communications.  Any communications to the Parties relating to this Agreement shall be sent to all counsel signing this Agreement on behalf of the Parties.

156.    Exhibits.  All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

157.    Calculation of Time.  All time listed in this Agreement is in calendar days.  Time is calculated by (a) excluding the day of the event that triggers the period; (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

IT IS SO AGREED TO BY THE PARTIES:

Date:  July ___, 2019
**KIM CARTER**

By:
Kim Carter
Individually and as Representative Plaintiff for the Settlement Class

counterparts shall have the same force and effect as if all signatories had signed the same document.

152.    Use and Retention of Information.  The list of Settlement Class Members' names, e-mail addresses, and street addresses referred to in Paragraph 11 of this Agreement, any Claim Forms submitted under Paragraph 114 above, and any other documentation containing the names, addresses, e-mail address, or other personal information of GNC customers, may be used by Class Counsel only for purposes of implementing this Agreement.  All such information shall be returned to GNC within thirty (30) days after the Effective Date.

153.    Continuing Jurisdiction.  The Court shall retain exclusive and continuing jurisdiction over this Agreement and over all Parties and Settlement Class Members to interpret, effectuate, enforce, and implement this Agreement.  The Court shall have exclusive jurisdiction to resolve any disputes involving this Agreement, subject to the dispute resolution mechanism set forth in Paragraph 119.

154.    Assignment; Third Party Beneficiaries.  None of the rights, commitments, or obligations recognized under this Agreement may be assigned by any member of the Settlement Class without the express written consent of the other Parties, except as expressly provided herein.

155.    Communications.  Any communications to the Parties relating to this Agreement shall be sent to all counsel signing this Agreement on behalf of the Parties.

156.    Exhibits.  All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

157.    Calculation of Time.  All time listed in this Agreement is in calendar days.  Time is calculated by (a) excluding the day of the event that triggers the period; (b) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (c) including the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below.

IT IS SO AGREED TO BY THE PARTIES:

Date:  July ___, 2019  (7/22/2019)
**KIM CARTER**

By: _K. Carter_
Kim Carter
Individually and as Representative Plaintiff for the Settlement Class

Date:  July 26, 2019
**ASHLEY GENNOCK**

By: _____
Ashley Gennock
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**KENNETH HARRISON**

By: _____
Kenneth Harrison
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**JENNA KASKORKIS**

By: _____
Jenna Kaskorkis
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**DANIEL STYLSLINGER**

By: _____
Daniel Styslinger
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**GENERAL NUTRITION CENTERS, INC.**

By: _____

Its: _____


Date:  July ___, 2019
**GNC HOLDINGS, INC.**

By: _____

Its: _____

Date: July ___, 2019
**ASHLEY GENNOCK**

By:
Ashley Gennock
Individually and as Representative Plaintiff for the Settlement Class


Date: July 25, 2019
**KENNETH HARRISON**

By:
Kenneth Harrison
Individually and as Representative Plaintiff for the Settlement Class


Date: July ___, 2019
**JENNA KASKORKIS**

By:
Jenna Kaskorkis
Individually and as Representative Plaintiff for the Settlement Class


Date: July ___, 2019
**DANIEL STYLSLINGER**

By:
Daniel Styslinger
Individually and as Representative Plaintiff for the Settlement Class


Date: July ___, 2019
**GENERAL NUTRITION CENTERS, INC.**

By:

Its:


Date: July ___, 2019
**GNC HOLDINGS, INC.**

By:

Its:

34

Date:  July ___, 2019
**ASHLEY GENNOCK**

By:
Ashley Gennock
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**KENNETH HARRISON**

By:
Kenneth Harrison
Individually and as Representative Plaintiff for the Settlement Class


Date:  July **30**, 2019
**JENNA KASKORKIS**

By:
Jenna Kaskorkis
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**DANIEL STYLSLINGER**

By:
Daniel Styslinger
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**GENERAL NUTRITION CENTERS, INC.**

By:

Its:


Date:  July ___, 2019
**GNC HOLDINGS, INC.**

By:

Its:

Date:  July ___, 2019
**ASHLEY GENNOCK**

By:
Ashley Gennock
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**KENNETH HARRISON**

By:
Kenneth Harrison
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**JENNA KASKORKIS**

By:
Jenna Kaskorkis
Individually and as Representative Plaintiff for the Settlement Class


Date:  July 26, 2019
**DANIEL STYLSLINGER**

By:
Daniel Styslinger
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**GENERAL NUTRITION CENTERS, INC.**

By:

Its:


Date:  July ___, 2019
**GNC HOLDINGS, INC.**

By:

Its:

Date:  July ___, 2019
**ASHLEY GENNOCK**

By:
Ashley Gennock
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**KENNETH HARRISON**

By:
Kenneth Harrison
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**JENNA KASKORKIS**

By:
Jenna Kaskorkis
Individually and as Representative Plaintiff for the Settlement Class


Date:  July ___, 2019
**DANIEL STYLSLINGER**

By:
Daniel Styslinger
Individually and as Representative Plaintiff for the Settlement Class


Date:  July **30**, 2019
**GENERAL NUTRITION CENTERS, INC.**

By: _Kenn S Nance_

Its: _SVP, Chief Legal & Compliance Officer_


Date:  July **30**, 2019
**GNC HOLDINGS, INC.**

By: _Kenn S Nance_

Its: _SVP, Chief Legal & Compliance Officer_

34

IT IS SO STIPULATED BY COUNSEL:


Date:  July  31_, 2019
**AHDOOT & WOLFSON, PC**

By:
Robert Ahdoot
Tina Wolfson

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**FINKELSTEIN & KRINSK LLP**

By:
Jeffrey R. Krinsk
Trenton R. Kashima

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**BARBAT, MANSOUR & SUCIU PLLC**

By:
Nick Suciu

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

By:
Gary F. Lynch
Todd Carpenter

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

IT IS SO STIPULATED BY COUNSEL:

Date: July ___, 2019
**AHDOOT & WOLFSON, PC**

By:
Robert Ahdoot
Tina Wolfson

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

Date: July 22, 2019
**FINKELSTEIN & KRINSK LLP**

By:
Jeffrey R. Krinsk
Trenton R. Kashima

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

Date: July ___, 2019
**BARBAT, MANSOUR & SUCIU PLLC**

By:
Nick Suciu

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

Date: July ___, 2019
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

By:
Gary F. Lynch
Todd Carpenter

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

IT IS SO STIPULATED BY COUNSEL:


Date:  July ___, 2019
**AHDOOT & WOLFSON, PC**

By:
Robert Ahdoot
Tina Wolfson


*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**FINKELSTEIN & KRINSK LLP**

By:
Jeffrey R. Krinsk
Trenton R. Kashima


*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July 30 , 2019
**BARBAT, MANSOUR & SUCIU PLLC**

By: *Nick Suciu*
Nick Suciu


*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

By:
Gary F. Lynch
Todd Carpenter


*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


35

IT IS SO STIPULATED BY COUNSEL:


Date:  July ___, 2019
**AHDOOT & WOLFSON, PC**

By:
Robert Ahdoot
Tina Wolfson

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**FINKELSTEIN & KRINSK LLP**

By:
Jeffrey R. Krinsk
Trenton R. Kashima

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July ___, 2019
**BARBAT, MANSOUR & SUCIU PLLC**

By:
Nick Suciu

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*


Date:  July 29, 2019
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

By:
Gary F. Lynch
Todd Carpenter

*Attorneys for Representative Plaintiffs and Proposed Class Counsel*

EXHIBIT A

# GNC PRICING SETTLEMENT CLAIM FORM

***Gennock v. General Nutrition Centers, Inc. and GNC Holdings, Inc.*, Case No. 2:16-cv-0063-MRH**

## USE THIS CLAIM FORM TO MAKE A CLAIM TO RECEIVE VOUCHERS AND/OR CASH PAYMENTS

### The DEADLINE to submit this Claim Form is: Month Day, 2019.

### I.     GENERAL INSTRUCTIONS

If you purchased a product on sale or through a promotion from www.GNC.com at any time from January 1, 2012 through Month Day, 2019, you are a "Class Member." If you received a Notice about this class action Settlement addressed to you, then the Settlement Administrator has already determined that you are a Class Member.

To file a claim to receive Vouchers and/or cash payments under the Settlement, you may submit this Claim Form electronically. Please complete and submit this Claim Form online **no later than [time] on Month Day, 2019**.  Claim Forms submitted after this deadline will not be accepted.

You may also print a copy of this Claim Form, complete the requested information, and mail it to the address below. Please type or legibly print all requested information in blue or black ink. Claim Forms that are not postmarked by Month Day, 2019 will not be accepted. Mail your completed Claim Form, including any supporting documentation by U.S. mail to:

*GNC Pricing Settlement*
[Settlement Admin Contact Info]
P.O. Box ___,
CITY, STATE, ZIP

### II.     CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to the distribution of Vouchers and/or cash payments, you must notify the Settlement Administrator by writing to the address above.

First Name                                        M.I.   Last Name

Alternative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                      State:        Zip Code:

Telephone Numbers (Home)

| | | - | | | | - | | | | |

Telephone Numbers (Home)

| | | - | | | | - | | | | |

Date of Birth (mm/dd/yyyy)

| | | / | | | / | | | | |

Claim Number Provided in E-mail or Postcard Notice

| | | | | | | | | | | | | | | | |

**Email Address [REQUIRED to receive Voucher(s)]**

| | | | | | | | | | | | | | | | | | | | | | | | | | |

*Please provide the e-mail address through which you would like to receive your Voucher(s).*

**Email Address [REQUIRED to receive cash payment(s)]**

PayPal                eCheck

| | | | | | | | | | | | | | | | | | | | | | | | | | |

*Please select whether you would like to receive your cash payment(s) via PayPal or eCheck, and provide the e-mail address associated with your account.*

### III.   ELECTION TO RECEIVE VOUCHERS AND/OR CASH PAYMENTS

**If you wish to receive Voucher(s) and/or cash payment(s), you must submit this Claim Form no later than Month, Day, 2019.**

The number of cash payments and/or Vouchers you can elect to receive depends on your eligibility, *i.e.*, whether you are claiming Settlement benefits as a "**Single Purchaser**" only, or whether you also qualify as a "**Multiple Purchaser**."

- You are a "**Single Purchaser**" if: (1) you purchased any product on sale or through a promotion from GNC's Website (www.GNC.com) at any time from January 1, 2012 to [Month Day, 2019].

  *If you are claiming benefits as a Single Purchaser, please complete the "Single Purchaser Election" section below, elect to receive either a Voucher or a cash payment and sign the attestation at the end of this Claim Form.*

---

#### SINGLE PURCHASER ELECTION

During the period from January 1, 2012 through **[date of Preliminary Approval]** I purchased a product on sale or through a promotion from GNC's website, located at www.GNC.com, did not apply a coupon to my purchase and never returned my purchase for a refund.

I am a **Single Purchaser** and elect to receive:

> Voucher that may be redeemed for merchandise through www.GNC.com (not expected to exceed $15.00)

---

> **OR**
>
> Cash payment (not expected to exceed $5.00)
>
> **Important:** *The Settlement Administrator will send your cash payment or Voucher to the e-mail address you provided in Section II, above. Please note that the amount of each cash payment and value of each Voucher may be adjusted up or down depending on how many people participate in the Settlement.*

- You may also qualify as a "**Multiple Purchaser"** and receive additional benefits if you made: (1) a total of five (5) or more purchases (each such qualifying purchase must have been made in a unique transaction on a day separate from any other qualifying transaction) from GNC's Website (www.GNC.com) at any time from January 1, 2012 to Month Day, 2019; or (2) a purchase in excess of $100.00 in a single transaction from www.GNC.com at any time from January 1, 2012 to Month Day, 2019.

*If you are claiming benefits as a Multiple Purchaser, please complete the "Multiple Purchaser Election" section below, elect to receive either a Voucher or a cash payment, sign the attestation at the end of this Claim Form, and submit proof of purchase for each transaction you believe qualifies you to be a Multiple Purchaser.*

---

**MULTIPLE PURCHASER ELECTION**

For claimants who also wish to be considered a **Multiple Purchaser**, please check the appropriate box (you only need to check one box), and submit a proof of purchase for each qualifying transaction described below:

> During the period from January 2012 through **[date of Preliminary Approval]** I made a total of five (5) or more purchases from www.GNC.com, with each qualifying transaction occurring on a day separate from any other qualifying transaction, and for each qualifying transaction, I did not apply a coupon to my purchase and never returned my purchase for a refund.
>
> During the period from January 2012 through **[date of Preliminary Approval]** I made a purchase in excess of $100.00 in a single transaction from www.GNC.com, and did not apply a coupon to my purchase and never returned my purchase for a refund.

If I qualify as a **Multiple Purchaser**, I elect to receive:

> Voucher that may be redeemed for merchandise through www.GNC.com (value not expected to exceed $15.00)
>
> **OR**
>
> Cash payment (not expected to exceed $5.00)

---

> **<u>Important:</u>** *The Settlement Administrator will send your additional cash payment or Voucher to the e-mail address you provided in Section II, above. Please note that the amount of each cash payment and value of each Voucher may be adjusted up or down depending on how many people participate in the Settlement.*

**ATTESTATION:**

**I _____, swear (or affirm) that the above statements and information provided on this Claim Form are true and correct to the best of my knowledge under penalty of perjury of the laws of the United States.**

By typing your name above and submitting your Claim Form, you are electronically signing your name and attesting to the above information.